2005 ME 51

**Kevin C. STANDRING**

v.

**TOWN OF SKOWHEGAN et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 20, 2004.
Decided: April 8, 2005.

Anthony Peverada (orally), Christopher J. Cotnoir, Worker Advocate Division, Workers' Compensation Board, Augusta, for employee.

Thomas Quartararo, Richard Bayer (orally), Robinson Kringer & McCallum, Portland, for employer.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Kevin C. Standring appeals from a decision of a hearing officer of the Workers' Compensation Board (*Elwin, HO*) that denied his petitions for incapacity and medical benefits. He contends that the hearing officer erred in concluding that his

injury, which occurred during the course of a physical agility test to secure a promotion from reserve to full-time police officer, did not arise out of and occur in the course of his employment as a police officer. Because we conclude that the hearing officer applied an incorrect standard in determining whether the injury at issue arose out of and occurred in the course of Standring's employment as a police officer, we vacate the hearing officer's decision.

## I. CASE HISTORY

[¶ 2] The hearing officer found that Kevin Standring was employed as a reserve police officer for the Town of Skowhegan. While on duty, a reserve police officer performs the same functions and possesses the same authority as a full-time patrol officer. A reserve officer has no set number of hours and receives no benefits beyond pay for hours served as a reserve officer. Standring earned an average of slightly more than $300 a week as a reserve officer.

[¶ 3] In July 2002, a full-time patrol officer position became available. The hearing officer found that Standring and two other reserve officers applied for promotion to the full-time patrol officer position. A physical agility test was a required part of the application process. Standring and the two other reserve officers participated in the physical agility test in August 2002. During the course of this test, Standring suffered a heart attack. Following the heart attack, Standring underwent surgery, followed by an eight-week rehabilitation program. The hearing officer found that Standring "returned to work" as a reserve officer in December 2002. He was hired as a full-time patrol officer in April 2003,[1] but then left employment for reasons unrelated to this case in June 2003.

[¶ 4] While undergoing cardiac rehabilitation therapy in November 2002, Standring filed petitions for award with the Workers' Compensation Board, seeking incapacity and medical benefits. The hearing officer denied the petitions, concluding that Standring's heart attack during the physical agility test did not arise out of and occur in the course of his employment. The reasons for the hearing officer's conclusions were that: (1) Standring was not being paid for his time taking the physical agility test; (2) he was not required to take that test to remain a reserve officer; (3) he was not guaranteed a promotion to the full-time position if he passed the test; (4) he was free to discontinue the test at any time and thus was not under the control of his employer; and (5) the "benefit Employer received from Employee's taking of the PAT does not rise to the level at which a contract of employment should be implied."

[¶ 5] To support her conclusions, the hearing officer cited only a 1987 intermediate appellate court case, *Boyd v. City of Montgomery,* 515 So.2d 6, 7 (Ala.Civ.App. 1987). In *Boyd,* an applicant for a police position, who had no connection with the police department, was injured during a physical agility test. *Id.* The appeals court found that this injury, to one who was not an employee, was not a compensable, job-related injury. *Id.*

[¶ 6] The hearing officer applied this precedent to bar Standring's claim, although she had found that Standring (1) "was a reserve officer at the time of his injury"; (2) had an established average weekly wage; and (3) after rehabilitation

---

1. At some points, the record indicates that Standring was hired as a full-time patrol officer in February 2003. That date of hire makes no difference to the resolution of issues in this case.

"returned to work for Employer as a reserve officer."

[¶ 7] Pursuant to 39–A M.R.S.A. § 322 (2001) and M.R.App. P. 23, we granted Standring's petition for appellate review.

## II. LEGAL ANALYSIS

[¶ 8] The workers' compensation law provides that when an employee "receives a personal injury arising out of and in the course of employment ... the employee must be paid compensation and furnished medical and other services by the employer." 39–A M.R.S.A. § 201(1) (2001). Pursuant to 39–A M.R.S.A. § 102(11)(A) (2001), an employee is broadly defined to include officials of state and municipal governments and "every person in the service of another under any contract of hire, express or implied, oral or written," subject to a number of exceptions not relevant to this case.[2]

[¶ 9] The hearing officer's reliance on a case involving a job applicant who had no connection to the employer suggests that the hearing officer did not fully consider the significance of the ongoing employment relationship that she found to exist between Standring and the Town. A job applicant who has no employment relationship with an employer, and is injured in the course of applying for a job, is not eligible for payment of workers' compensation benefits as an employee. When a person has an existing, ongoing employment relationship with an employer, an injury may be compensable, even if it occurs during a time when the employee is not being paid, but only if that injury is one "arising out of and in the course of employment." 39–A M.R.S.A. § .201(1).

[¶ 10] We extensively discussed the parameters for resolving whether an injury arises out of and occurs in the course of employment in *Comeau v. Maine Coastal Services*, 449 A.2d 362, 365–67 (Me.1982).[3] In *Comeau*, we noted that the term "in the course of" employment relates to the time, place, and circumstances under which an injury occurs, the place where the employee reasonably may be in performance of the employee's duties, and whether it occurred while fulfilling those duties or engaged in something incidental to those duties. *Id.* at 365. We then noted that the term "arising out of" employment means that there must be some causal connection between the conditions under which the employee worked and the injury, or that the injury, in some proximate way, had its origin, its source, or its cause in the employment. *Id.* We further noted that the employment need not be the sole or predominant causal factor for the injury and that the causative circumstance need not have been foreseen or expected. *Id.* at 365–66.

[¶ 11] We outlined a number of considerations that may be examined in determining whether a particular injury arises out

---

2. Title 39–A M.R.S.A. § 102(11)(C) (2001) excludes from the definition of employee a person who is otherwise an employee who is injured as a result of that person's voluntary participation in an employer-sponsored athletic event or team. The Town appropriately does not contend that the physical agility test, a prerequisite to employment as a full-time patrol officer, was such an exempt athletic event.

3. In the two decades since *Comeau*, we have continued to rely on it as the basis for analysis of arising out of and in the course of employment questions. *See Cox v. Coastal Prods. Co.*, 2001 ME 100, ¶ 8, 774 A.2d 347, 349; *Husvar v. Engineered Prods., Inc.*, 2000 ME 132, ¶ 5, 755 A.2d 498, 500; *Moore v. Pratt & Whitney Aircraft*, 669 A.2d 156, 158–59 (Me.1995); *Morse v. Laverdiere's Super Drug Store*, 645 A.2d. 613, 614 (Me.1994); *Somes v. Flint Logging*, 635 A.2d 941, 942 (Me.1993).

of and in the course of employment. *Id.* at 367. These factors were:

(1) Whether at the time of the injury the employee was promoting an interest of the employer, or the activity of the employee directly or indirectly benefited the employer.

(2) Whether the activities of the employee work to the benefit or accommodate the needs of the employer.

(3) Whether the activities were within the terms, conditions or customs of the employment, or were acquiesced in or permitted by the employer.

(4) Whether the activity of the employee serves both a business and personal purpose, or represents an insubstantial deviation from the employment.

(5) Whether the hazard or causative condition can be viewed as employer or employee created.

(6) Whether the actions of the employee were unreasonably reckless or created excessive risks or perils.

(7) Whether the activities of the employee incidental to the employment were prohibited by the employer either expressly or implicitly.

(8) Whether the injury occurred on the premises of the employer.

*Id.* (citations omitted).

■ [¶ 12] The hearing officer's analysis did not address *Comeau* or any subsequent opinion discussing this issue, and did not consider the factors suggested in *Comeau* in reaching the decision on the arising out of and in the course of employment issue. The hearing officer also did not appear to consider our holding in *Comeau* that an injury may arise out of and occur in the course of employment if, at the time of the injury, a person is an employee and the injury arises either directly from the performance of the employee's duties, or from the employee's engagement in an ac-

tivity "incidental" to those duties. *Id.* at 365.

■ [¶ 13] An injury is compensable if "the injury, in some proximate way, had its origin, its source, [or] its cause in the employment." *Id.* (*quoting Barrett v. Herbert Eng'g, Inc.*, 371 A.2d 633, 636 (Me.1977)). Here, there is no dispute that the heart attack occurred during the physical agility test provided to reserve officer employees of the department who were being offered the opportunity for advancement to a full-time patrol officer position. Although applying for a full-time officer position was not a required condition of employment as a reserve officer, the reserve officers' applications for advancement were certainly promoted and thus permitted by the Town. Standring's activities arguably served both the business purposes of the Town and his interests in advancement. In participating in a physical agility test for which they were not paid, the employees arguably engaged in an insubstantial deviation from their regular employment as reserve officers.

[¶ 14] The hazard or condition that brought on the heart attack here was the physical agility test of the employer. Thus, it was an employer not an employee-created hazard. Further, the injury occurred during the employee's performing the physical agility test in the manner in which it was intended to be performed and not from the employee's engaging in unreasonably reckless actions or creating excessive risks. The actions of the employee were not prohibited and in fact were encouraged by the employer, and the injury occurred at a place selected by the employer for the purpose of the employment-related physical agility test.

[¶ 15] Accordingly, application of the criteria suggested in *Comeau* for resolving the question of whether a particular injury arises out of and in the course of employ-

ment may support the conclusion that this particular injury arose out of and in the course of employment for purposes of determining eligibility for benefits pursuant to 39–A M.R.S.A. § 201(1). Because the hearing officer did not appear to consider that Standring had an employment relationship with the Town and did not apply the criteria we have discussed in *Comeau* and subsequent cases in resolving Standring's petitions for incapacity and medical benefits, we must vacate and remand for reconsideration of the petitions in accordance with this opinion.

The entry is:

Decision of the hearing officer vacated. Remanded for further consideration of the petitions for award of benefits in accordance with this opinion.

RUDMAN, J., files a concurring opinion in which CLIFFORD, J., joins.

RUDMAN, J., with whom CLIFFORD, J. joins, concurring.

[¶ 16] Although I concur in the Court's decision to vacate the decision of the hearing officer, I do so because the hearing officer did not consider all of the factors that should be considered in determining whether Standring's injury was connected to his employment.

[¶ 17] The facts in this case are not in dispute. The hearing officer found that Standring, "a fifty-two year old Waterville resident, worked for [the Town of Skowhegan] as a reserve police officer." The hearing officer further noted "[t]here is no dispute that [Standring] suffered a heart attack while running during the PAT conducted on August 30, 2002, or that he notified [the Town] of this injury in a timely manner."

[¶ 18] The hearing officer correctly noted that her job was to "determine whether an applicant for a job who participates in a physical [agility] test as part of an employer's application process, is an 'employee' entitled to the protection of the Workers' Compensation Act."

[¶ 19] The Court correctly notes that "the workers' compensation law provides that when an employee 'receives a personal injury arising out of and in the course of employment'" the employee is entitled to be paid compensation and furnished with medical and other services by the employer. 39–A M.R.S.A. § 201(1) (2001). The issue before us is whether an injury sustained by a person employed by the employer in a different capacity during a tryout for another position is compensable as a job-related accident.

[¶ 20] Although there are cases to the contrary,[4] the more recent view adopted in *Younger v. City and County of Denver,* 810 P.2d 647 (Colo.1991), outlines some of the factors which should be considered when determining whether a job applicant is entitled to the benefits of the Workers' Compensation Act. Younger voluntarily applied for a position as a police officer. *Id.* at 653. She was neither encouraged to pursue this position nor was she paid for her participation in the application process. *Id.* She was taking the test for her own benefit so that she would be eligible for employment. Had Younger successfully completed the physical agility test she would have still been required to pass background checks, polygraph tests, and a medical examination merely to qualify from the pool of candidates from which the final selection of police officers would be made. *Id.* The Colorado court concluded that there was no mutual agreement between the City of Denver and Younger

---

4. *See, e.g., Laeng v. Workmen's Comp. Appeals Bd.,* 6 Cal.3d 771, 100 Cal.Rptr. 377, 494 P.2d 1 (1972); *Smith v. Venezian Lamp Co.,* 5 A.D.2d 12, 168 N.Y.S.2d 764 (1957).

sufficient to create an employer-employee relationship that would justify an award of workers' compensation benefits. *Id.*

[¶ 21] The language of our statute unambiguously indicates that workers' compensation benefits arise directly from the contractual relationship between employer and employee pursuant to which the employee was performing the service resulting in his/her injury.[5] Not all applicants injured during a pre-employment physical agility test are entitled to compensation, otherwise "every person who makes application to an employer for a job, fills out an application and takes any kind of test is *ipso facto* an employee." *Dykes v. State Accident Ins. Fund,* 47 Or.App. 187, 613 P.2d 1106, 1107 (1980). Such is not the law in Maine.

[¶ 22] Moreover, while a "contract for hire" may be express or implied, written or oral, it must always be consensual. "To thrust upon a worker an employee status to which he or she has never consented ... might well deprive him or her of valuable rights under the compensation act, notably the right to sue his or her own employer for common-law damages." 3 ARTHUR LAWSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 64.01 at 64–3 (2004).

[¶ 23] The hearing officer acknowledged Standring's relationship with the Town. Prior to voluntarily taking the test, Standring was a reserve officer. No one disputes that Standring had been employed by the Town in that capacity. There is no dispute that 39–A M.R.S.A. § 201(1) provides that "an employee" who "receives a personal injury arising out of and in the course of employment" is entitled to compensation benefits. In her opinion, the hearing officer appears to con-

flate the issues. First, she states that "the primary issue in this case is whether [Standring's] heart attack arose out of and in the course of his work for [the Town]" and then concludes there was no contract of employment.

[¶ 24] I would vacate the decision of the hearing officer and remand for her to determine, pursuant to the factors considered by the Colorado court in *Younger,* whether the employment relationship between Standring and the Town was sufficiently related to the full-time police officer position for which Standring was applying, so that Standring's injury can be said to arise out of and in the course of his employment.

---

5. " 'Employee' includes ... every person *in the service of another under any contract* of hire, express or implied, oral or written...."

39–A M.R.S.A. § 102(11) (2001) (emphasis added).