2006 ME 42

Peter HOGLUND

v.

**AASKOV PLUMBING &
HEATING et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 25, 2006.
Decided: April 26, 2006.

Alexander McCann (orally), Portland, for the employee.

Kevin Gillis (orally), Troubh Heisler, Portland, for the employer.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Aaskov Plumbing & Heating appeals from a decision of a hearing officer of the Workers' Compensation Board (*Sprague, H.O.*) denying its petition for review of incapacity. The hearing officer determined that because the parties had entered into a prior mediated agreement, Aaskov was required to prove a change in the employee's circumstances in order to reduce or discontinue benefits. Aaskov contends that this was error, and that the parties should have been permitted to prove the facts related to level of incapacity without reference to the prior agreement. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] Peter Hoglund was sixty-one years old at the time of the hearing. He has a master plumber's license and worked as a union plumber throughout most of his career. He went to work for Aaskov Plumbing & Heating in the mid–1990s. On April 5, 2001, while employed by Aaskov, he stepped into a hole in a customer's basement that had been obscured by floodwater, and injured his knee. Hoglund continued to work after the injury, but was terminated by Aaskov in October 2001. He applied for and received unemployment benefits. Shortly after losing his job, Hoglund underwent arthroscopic surgery. He continues to be treated for knee pain, and has not been employed since last working for Aaskov. Aaskov voluntarily paid workers' compensation and medical benefits.

[¶ 3] The parties participated in mediation on January 30, 2002. The record lists the following as issues to be addressed in the mediation: average weekly wage, work-relatedness, period of incapacity, occurrence of injury, degree of incapacity, lost wages, medical bills and treatment, pre-existing conditions, improper termination and possibly, discrimination. The parties reached an agreement. The signed record of mediation sets forth the following terms: "The parties agree that the employee will be paid at a rate of total from 10–6–01 ongoing. The insurer will take an offset for all unemployment benefits. Medical bills and treatment will be paid as well."

[¶ 4] In August of 2003, Aaskov filed a twenty-one-day notice of discontinuance pursuant to 39–A M.R.S. § 205(9)(B)(1) (2005).[1] Hoglund filed a petition for review and request for provisional order, contesting Aaskov's actions. The hearing officer (*McCurry, H.O.*), ruled that the agreement reached at mediation "established a compensation payment scheme," and accordingly, Aaskov was not permitted to discontinue benefits until after a hearing and determination by the Board. *See* 39–A M.R.S. § 205(9)(B)(2) (2005).[2]

[¶ 5] Aaskov filed a petition for review of incapacity. The hearing officer (*Sprague, H.O.*) determined that the agreement reached at mediation was a final order having res judicata effect on factual issues, citing *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 590 (Me.1996). The hearing officer interpreted the agreement to provide for 100% partial incapacity benefits, and determined that, in order to merit a reduction in benefits, Aaskov was required to demonstrate a change in Hoglund's economic or medical circumstances since the mediation.[3] After the hearing, the hearing

---

1. Title 39–A M.R.S. § 205(9)(B)(1) (2005) provides, in relevant part:

    If no order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer may discontinue or reduce benefits by sending a certificate by certified mail to the employee and to the board, together with any information on which the employer, insurer or group self-insurer relied to support the discontinuance or reduction. The employer may discontinue or reduce benefits no earlier than 21 days from the date the certificate was mailed to the employee.

2. Title 39–A M.R.S. § 205(9)(B)(2) (2005) provides:

    If an order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer shall petition the board for an order to reduce or discontinue benefits and may not reduce or discontinue benefits until the matter has been finally resolved through the dispute resolution procedures of this Act, any appeal proceedings have been completed and an order of reduction or discontinuance has been entered by the board.

3. One hundred percent partial incapacity benefits are awarded "based on the combination of a partially incapacitating work-injury and the loss of employment opportunities attribut-

officer determined that Aaskov failed to meet this burden, and denied the petition for review. Aaskov filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2005).

## II. DISCUSSION

[¶ 6] Aaskov contends that the agreement in this case, memorialized in the mediation report, was not the equivalent of a factual finding on the extent of incapacity following litigation. According to Aaskov, the agreement represents a compromise achieved in order to avoid litigation, and should have been interpreted only as an agreement on its part to pay benefits at a certain level. Aaskov argues that under the circumstances, it was entitled to a de novo hearing on the issue of the extent of Hoglund's incapacity.[4]

[¶ 7] "We have previously recognized a legislative intent in title 39–A to encourage mediation. Indeed, we have stated that mediation pursuant to the new Act was intended to 'replace litigation whenever possible.'" *Jasch v. Anchorage Inn,* 2002 ME 106, ¶ 17, 799 A.2d 1216, 1220 (quoting *Bureau,* 678 A.2d at 590).[5] Section 313(1) provides that "upon filing of notice of controversy or other indication of controversy, the matter must be referred by the board to mediation." 39–A M.R.S. § 313(1)

(2005). At the conclusion of the mediation, the mediator is required to file a written report to the Board, containing certain information:

> [T]he mediator shall file a written report with the board stating the information required by section 305, 2nd paragraph and the legal issues in dispute. If an agreement is reached, the report must state the terms of the agreement and must be signed by the parties and the mediator. If a full agreement is not reached, the report must state the information required by section 305, 2nd paragraph, any terms that are agreed on by the parties and any facts and legal issues in dispute and the report must be signed by the parties and the mediator.

39–A M.R.S. § 313(3) (2005).[6]

[¶ 8] In *Bureau,* 678 A.2d at 590, we affirmed a Board determination that a mediation report, signed by the parties, is binding on factual issues. After the mediation, the parties signed a written agreement stating that the employee had "suffered short-term total and continuing partial incapacity as a result of his work-injury." *Id.* at 589. The employee was later fired for cause, and the employer unilaterally ceased paying benefits. *Id.* The employee petitioned for review, and the Board ruled that the mediation agree-

---

able to that injury." *Morse v. Fleet Fin. Group,* 2001 ME 142, ¶ 6, 782 A.2d 769, 771–72.

**4.** Aaskov does not dispute the hearing officer's provisional determination that the agreement reached at mediation constitutes a compensation scheme pursuant to 39–A M.R.S. § 205(9)(B)(2), or that a hearing officer determination was required before it could discontinue benefits.

**5.** The Legislative History referred to in *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 590 (Me.1996), includes a statement of Representative Anthony that "[t]he strength of [Title 39–A] is to convert from a litigated system to

a system centered around mediation," 7 Legis. Rec. H–45 (3d Spec. Sess. 1992), and a statement from Senator Bustin that "if this system works the way people think it's going to work, with the way the Blue Ribbon Commission thinks it's going to work, then the mediation is going to take care of all the cases." *Id.* at S–24.

**6.** The second paragraph of section 305 requires that the mediator include in the report "the names and residences of the parties, the facts relating to the employment at the time of the injury, the time, place and cause of the injury, and the nature and extent of the injury." 39–A M.R.S. § 305 (2005).

ment was binding on the issue of whether a work-related injury occurred. *Id.* We affirmed, reasoning as follows:

> Section 313(3) provides that "[i]f an agreement is reached, the [mediation] report must state the terms of the agreement and must be signed by the parties and the mediator." 39–A M.R.S.A. § 313(3) (Supp.1995). The legislative history suggests that the Legislature intended mediation to replace litigation whenever possible. Recently, the full Board unanimously ruled that mediation agreements are binding. *Gross v. Hannaford Bros. Co.,* Dec. No. 95–01, WCB # 93–009561 (Me.1995). We agree with the Board that "[i]t would deprive Section 313 of meaning to allow a party to enter into a signed agreement and then refuse to comply with its terms . . . ." *Gross,* slip op. at 2.

*Id.* at 590. *See also Jasch,* 2002 ME 106, ¶¶ 17–18, 799 A.2d at 1220 (affirming hearing officer's treatment of a mediated agreement as an "award" for the purpose of determining prejudgment interest, stating "we have held that mediated agreements are accorded the same res judicata effect and enforceability as a Board or judicial decree.").

■ [¶ 9] In light of the recognized "legislative policy to equate mediated agreements with formal hearing officer decrees," *id.* ¶ 18, 799 A.2d at 1220, it was within the hearing officer's authority in this case to require proof of changed circumstances before altering the agreed-upon payment scheme. *See Grubb v. S.D. Warren Co.,* 2003 ME 139, ¶ 7 n. 4, 837 A.2d 117, 120. To do otherwise, that is, to require de novo proof of the facts after the parties had foregone a hearing and participated in a process intended to finally resolve most disputes, would create a disincentive to settle. And while there are legitimate concerns about the preclusive effect of agreements that represent a compromise, these concerns can be addressed by careful drafting in the report of mediation.

■ [¶ 10] The hearing officer construed the mediated agreement between Hoglund and Aaskov to provide for payment of 100% partial incapacity benefits. In order to reduce those benefits, Aaskov had the burden to prove changed circumstances by "either providing 'comparative medical evidence,' or by showing changed economic circumstances." *Id.* ¶ 7, 837 A.2d at 119–20. To that end, Aaskov presented surveillance evidence demonstrating that at the time of the hearing, Hoglund had some work capacity. The hearing officer nevertheless concluded that Aaskov did not meet its burden because (1) the evidence also showed that Hoglund had some work capacity at the time of the mediation; (2) the independent medical examiner opined that Hoglund's medical condition had not changed since the 2002 mediation; and (3) Aaskov presented no evidence of a change in economic circumstances.

[¶ 11] The hearing officer's decision in this case constitutes a reasonable interpretation of the agreement and involved no misapplication of the law. Further, the determination that Aaskov did not meet its burden of proving that Hoglund's medical or economic circumstances had changed since the mediation is supported in the record.

The entry is:

The decision of the hearing officer is affirmed.