2010 ME 98

**Kurt M. FEIEREISEN**

v.

**NEWPAGE CORP. et al.**

Supreme Judicial Court of Maine.

Argued: June 15, 2010.
Decided: Oct. 14, 2010.

---

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Kurt M. Feiereisen.

John H. King, Jr., Esq. (orally), C. Lindsey Morrill, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Rumford Paper Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, and JABAR, JJ.

GORMAN, J.

[¶ 1] Kurt M. Feiereisen appeals from a decision of the Workers' Compensation Board (*Goodnough, HO*) denying his petition for award of benefits for an injury suffered while traveling to a workers' compensation mediation for a previous injury.

We conclude that the injury did not arise out of and in the course of employment, and affirm the hearing officer's decision.

## I. FACTUAL BACKGROUND

[¶ 2] Feiereisen began working at Newpage Corp. (f/k/a the Rumford Paper Mill) in 1986 as a belt driver in the shipping department. He injured his neck, mid-back and left arm at work in 1987, and again in 1997. Thereafter, Newpage transferred Feiereisen to a light-duty job in the guardhouse at the Farrington Mountain Landfill. He sustained a gradual injury to his back in 2007 as a result of poor ergonomic conditions in the guardhouse.

[¶ 3] On January 2, 2008, while traveling to the Lewiston Regional Office of the Workers' Compensation Board for a mediation session in connection with all of these work injuries, Feiereisen was involved in a car accident, causing an injury to his right shoulder that rendered him unable to work until August 17, 2008. Feiereisen then resumed work in a light duty position, but has been laid off periodically since that time.

[¶ 4] On June 12, 2008, Feiereisen filed petitions for award for four dates of injury, including the 2008 car accident. The hearing officer granted the petitions related to the 1987, 1997, and 2007 dates of injury, after finding Feiereisen to be fifty percent incapacitated as a result of those injuries. The hearing officer denied the petition for award for the 2008 car accident injury, however, because he found that the 2008 injury did not arise out of and in the course of employment.

[¶ 5] Both parties moved for additional findings of fact and conclusions of law. The hearing officer issued additional findings unrelated to the 2008 car accident injury that did not alter the original decision. We granted the employee's subsequent petition for appellate review pursuant to 39–A M.R.S. § 322(3) (2009) and M.R.App. P. 23(c), limiting our review to a single question: whether the injury resulting from a car accident that occurred en route to a workers' compensation mediation arose out of and in the course of employment.

## II. DISCUSSION

[¶ 6] In the context of workers' compensation, we have long distinguished injuries that "can properly be said to be a consequence of industrial activity" from those that "are a consequence of life in general." *Comeau v. Me. Coastal Servs.*, 449 A.2d 362, 366 (Me.1982). Only the former are compensated; the Workers' Compensation Act mandates that injuries are compensable only when they "arise out of and in the course of employment." 39–A M.R.S. §§ 201(1), 206 (2009). Determining whether an injury arises out of and occurs in the course of employment involves multiple limiting considerations:

> "[I]n the course of" employment relates to the time, place, and circumstances under which an injury occurs, the place where the employee reasonably may be in performance of the employee's duties, and whether it occurred while fulfilling those duties or engaged in something incidental to those duties.... [T]he term "arising out of" employment means that there must be some causal connection between the conditions under which the employee worked and the injury, or that the injury, in some proximate way, had its origin, its source, or its cause in the employment.

*Standring v. Town of Skowhegan*, 2005 ME 51, ¶ 10, 870 A.2d 128, 130 (citations omitted); *see also Comeau*, 449 A.2d at 365–67.

■ [¶ 7] In evaluating whether injuries that occur during travel arise out of and in the course of employment, we must first consider the "going and coming rule," or the "public streets rule." This principle provides "that an accident occurring off the employer's premises while an employee is merely on his way to or from his place of business is not, without more, compensable." *Waycott v. Beneficial Corp.*, 400 A.2d 392, 394 (Me.1979). On the theory that all travelers are in similar "peril" while driving, and the risks faced on the street are not in any way enhanced or changed by one's employment, such injuries are generally not considered to arise out of and in the course of employment. *Id.* We have explained the rationale for the rule as follows:

> [I]t has at various times been stated that such an injury does not "arise out of" the employment, or that it does not occur "in the course of" the employment, or both. Whether stated that in going and coming to work an employee is "exposed to the same hazards, and no more, as other members of the traveling public," or that while outside the business premises and not engaged in any work-related activity an employee is not within the spatiotemporal boundaries of employment, the rule is ultimately grounded in the notion that there is an insufficient connection with the employment context to warrant compensation for an injury occurring in such circumstances.

*Id.* at 394 (citations omitted).

[¶ 8] When a sufficient connection exists between the employee's presence on the highway and her employment, however, we have recognized exceptions to the going and coming rule. *See, e.g., Cox v. Coastal Prods. Co.*, 2001 ME 100, ¶ 10, 774 A.2d 347, 349–50(holding that the "dual purpose" exception allows compensation when a trip serves both business and private purposes); *Abshire v. City of Rockland*, 388 A.2d 512, 514–15 (Me.1978) (concluding that the "special errand" applies to travel undertaken at the request of the employer); *Oliver v. Wyandotte Indus. Corp.*, 308 A.2d 860, 863 (Me.1973) (determining that a "special hazard" exception applies when the risks of employment carry over after the employee has entered the public way); *Brown v. Palmer Constr. Co.*, 295 A.2d 263, 267 (Me.1972) (concluding that the "traveling employee" exception applies "when the injury has its origin in a risk created by the necessity of sleeping and eating away from home").

■ [¶ 9] Feiereisen relies on the exception we announced in *Moreau v. Zayre Corp.*, 408 A.2d 1289 (Me.1979). There we vacated a decision denying benefits to an employee who sustained neck and back injuries while driving home after receiving medical treatment for a hand injury she claimed had occurred at work. *Id.* at 1291, 1295. The workers' compensation commissioner denied the employee's petition because the underlying hand injury had never been determined to be work-related and, in fact, the employee had never filed a petition concerning the hand injury. *Id.* at 1291. We held that, notwithstanding the employee's failure to file a petition concerning the hand injury, the focus was on determining whether the hand injury would have been compensable if the employee had already sought compensation for it. *Id.* at 1294. Reasoning that the employer's obligation pursuant to the Workers' Compensation Act to provide medical services, and the employee's reciprocal obligation to accept those services, had become part of the employment contract, we concluded if the original injury for which she was receiving treatment were compensable, the injury that occurred while traveling from the medical

appointment would also be compensable.[1] *Id.*

[¶ 10] Newpage argues, and the hearing officer concluded, that this case should instead be governed by *Dorey v. Forster Manufacturing Co.*, 591 A.2d 240 (Me. 1991). In *Dorey*, a commissioner held that an injury sustained by an employee while retrieving records to pursue her workers' compensation claim did not arise out of and in the course of employment. 591 A.2d at 241. Given the undisputed facts surrounding the injury in *Dorey*, we reasoned:

> In conducting such inquiries, it is not always possible to draw clear lines delineating what constitutes "in the course of" or "arising out of" employment. The analysis proceeds on a case-by-case basis, weighing each fact situation to decide whether the totality of circumstance make the activity employment-related. These cases fall on a continuum ranging from cases involving injuries that are clearly work-connected to cases involving injuries clearly falling outside the employment relationship. . . .

> One critical factor in determining whether the injury occurred "in the course of employment" is whether the activity was "implied into the contract of employment."

*Id.* at 242 (citations omitted). In discussing whether Dorey's activity at the time of her injury was "implied into the contract of employment," we noted that her retrieval of documents was done not to further her medical treatment, but rather to have them available at an "informal conference" regarding another claim against her employer that the employer was "actively contesting." *Id.* at 241, 242. We also noted that several other jurisdictions agreed that acts undertaken to pursue a claim against an employer neither arise out of and in the course of employment, nor promote the interests of the employer. *Id.* at 242 (citing *Hendrickson v. George Madsen Constr. Co.*, 281 N.W.2d 672, 675 (Minn.1979) (determining that an employee's death from a heart attack suffered shortly after testifying at a workers' compensation hearing did not arise out of and in the course of employment)).[2]

[¶ 11] Feiereisen asserts that, although his travel was undertaken to pursue a claim against the employer, his participation was mandatory and, therefore, part of the employment contract. 39-A M.R.S. § 313 (2009). The mandate to participate does not, however, transform Feiereisen's attendance at mediation into an obligation that is reciprocal to any employer action or obligation. Feiereisen's travel that day served only his own purpose: to proceed

---

1. Most jurisdictions agree that injuries sustained when traveling to or from an appointment for medical treatment of a work-related injury are compensable. *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.07 (2009).

2. Few courts have addressed whether injuries occurring during travel to pursue litigation of a workers' compensation claim are compensable. Of those that have, however, the majority hold that such injuries are not compensable. *See Keovorabouth v. Indus. Comm'n of Ariz.*, 222 Ariz. 378, 214 P.3d 1019, 1023–24 (App.2009), *review denied*, 2010 Ariz. LEXIS 4 (Ariz. Jan. 5, 2010) (holding that an injury that occurred when traveling to a deposition in a workers' compensation proceeding did not arise out of and in the course of employment); *Huffman v. Koppers Co.*, 94 Md.App. 180, 616 A.2d 451, 456 (1992), *aff'd*, 330 Md. 296, 623 A.2d 1296 (1993) (holding that a heart attack occurring after a deposition in a workers' compensation case is not compensable); *Douglas v. Spartan Mills*, 245 S.C. 265, 140 S.E.2d 173, 175–76 (1965) (holding that an injury sustained during travel to a workers' compensation hearing was not compensable because, among other reasons, the travel was for personal benefit).

with his claim for benefits by participating in the current-day equivalent of *Dorey's* informal conference, i.e., a mediation session. It did not "benefit" Newpage any more than his attendance at a hearing would benefit Newpage.

[¶ 12] Feiereisen also attempts to distinguish mediation from the litigation process because mediation requires collaboration between the employer and employee, and is a process intended by the Legislature to work out agreed-upon solutions in place of litigation where possible. We recognize that, had the parties agreed to a resolution of Feiereisen's claims at mediation, there would have been no need for further litigation, and that adding mediation to the workers' compensation system was intended to make the system less adversarial and more flexible and realistic. Nevertheless, mediation is, like litigation, a system for resolving disputes, and injuries occurring during attendance at dispute resolution events are not compensable in a workers' compensation scheme.

[¶ 13] Feiereisen's activity at the time of the accident falls squarely within the public street rule, and fits none of the exceptions we have carved out of that rule. His travel to mediation was not an activity that was implied into his contract of em-

ployment and was not an action that promoted the interests of his employer. Feiereisen's injury "did not have its origin in circumstances created by the employer for the purpose of furthering [its] interests any more than if the injury had occurred on the way to or from work." *Waycott,* 400 A.2d at 395. Newpage cannot be made responsible for Feiereisen's injuries, because it could not control or affect the risk in this car accident. At the time of the accident, Newpage did not have responsibility for Feiereisen's automobile or for the behavior of the driving public. We therefore affirm the decision of the hearing officer.[3]

The entry is:

The decision of the Workers' Compensation Board is affirmed.

JABAR, J., with whom ALEXANDER, J., joins, dissenting.

[¶ 14] I respectfully dissent. Because employers and employees are mutually obligated to participate in mediation in workers' compensation cases, those obligations have by implication become incorporated into the contract of employment. *See* 39–A M.R.S. § 313 (2009).[4] Accordingly, I

---

3. Feiereisen also contends that the 2008 shoulder injury is a compensable sequela of the work injuries at issue in the mediation, asserting "but for Mr. Feiereisen's compensable injuries, he would not have been en route to mediation on January 28, 2008" (citing *Crocker v. Eastland Woolen Mill, Inc.,* 392 A.2d 32, 34 (Me.1978) (holding that the use of crutches in treatment for a work-related foot injury caused compensable aggravation of pre-existing nonwork-related back injury)). We conclude that Feiereisen's car accident injury was too attenuated from his previous work injuries to be considered a compensable sequela of those injuries.

4. Title 39–A M.R.S. § 313 (2009) provides, in relevant part:

1. **Procedure.** Except as provided in section 205, subsection 9, paragraph D, upon filing of notice of controversy or other indication of controversy, the matter must be referred by the board to mediation.

2. **Mediation.** The mediator shall by informal means, which may include telephone contact, determine the nature and extent of the controversy and extent of the controversy and attempt to resolve it. The mediator ... may require that the parties appear and submit relevant information.

3. **Conclusion.** At the conclusion of mediation, the mediator shall file a written report with the board stating the information required by section 305, 2nd paragraph and the legal issues in dispute. If an agreement is reached, the report must state the terms of the agreement and must be signed

would hold that travel to a workers' compensation mediation is incidental to employment, and an injury incurred by an employee during that travel arises out of and in the course of employment.

[¶ 15] As noted by the Court, we traditionally follow the "going and coming" or the "public streets" rule, which provides "that an accident occurring off the employer's premises while an employee is merely on his way to or from his place of business is not, without more, compensable." *Waycott v. Beneficial Corp.*, 400 A.2d 392, 394 (Me.1979). While the rule is "grounded in the notion that there is an insufficient connection with the employment context to warrant compensation for an injury occurring in such circumstances," we have, in the past, not hesitated to compensate an off-premises accident when there is "a significant relationship between injury and employment." *Id.* We found such a "significant relationship," and thus, an exception to the rule, in *Moreau v. Zayre Corp.*, 408 A.2d 1289 (Me.1979).

[¶ 16] In *Moreau*, the employee suffered an injury when driving home from medical treatment for her work-related injury. *Id.* at 1291. She was denied benefits on the ground that the injury did not arise out of and in the course of employment because there had not been a determination that the injury for which she was receiving treatment was compensable. *Id.* We vacated the decision and remanded for a determination of whether the initial injury was compensable. *Id.* at 1295. We reasoned that the Workers' Compensation Act places reciprocal obligations on the employer to provide and the injured employee to accept medical treatment, which are obligations that have become part of the employment contract. *Id.* at 1294. Thus, if the first injury was work-related, medical treatment for that injury was incident to the employment, and an injury that occurred when traveling from the medical appointment would arise out of and in the course of employment. *Id.*

[¶ 17] Most jurisdictions agree that injuries sustained when traveling to or from an appointment for medical treatment of a work-related injury are compensable. *See* 1 Arthur Larson & Lex K. Larson, *Lar-*

---

by the parties and the mediator. If a full agreement is not reached, the report must state the information required by section 305, 2nd paragraph, any terms that are agreed on by the parties and any facts and legal issues in dispute and the report must be signed by the parties and the mediator.

**4. Cooperation; sanctions.** The parties shall cooperate with the mediator assigned to the case. The assigned mediator shall report to the board the failure of a party to cooperate or to produce requested material. The board may impose sanctions against a party who does not cooperate or produce requested materials, including the following:

A. Assessment of costs and attorney's fees;

B. Reductions of attorney's fees; or

C. If the party is the moving party, suspension of proceedings until the party has cooperated or produced the requested material.

. . . .

**5. Duties of employer or representative of the employee, employer or insurer.** The employer or representative of the employee, employer or insurer who participates in mediation must be familiar with the employee's claim and has authority to make decisions regarding the claim. The board may assess a forfeiture in the amount of $100 against any employer or representative of the employee, employer or insurer who participates in mediation without full authority to make decisions regarding the claim. If a representative of the employer, insurer or employee participates in mediation or any other proceeding of the board, the representative shall notify the employer, insurer or employee of all actions by the representative on behalf of the employer, insurer or employee and any other actions at the proceeding.

son's *Workers' Compensation Law* § 10.07 (2009). In Professor Larson's view, the best rationale for providing compensation in these cases is the one we followed in *Moreau*: "the employer is under a statutory duty to furnish medical care, and the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract." *Id.*

[¶ 18] There is authority holding that where the employee is injured off-premises while pursuing his own interest, such as litigation of his workers' compensation claim, the injury does not come under the exception to the going and coming rule. We adopted this approach in *Dorey v. Forster Manufacturing Co.,* 591 A.2d 240 (Me.1991). Following *Dorey,* the Court today concludes that no reciprocal duties to participate in mediation have by implication become part of the employment contract because the employee acts exclusively in his own interest.

[¶ 19] However, the injury in *Dorey* occurred before the Legislature enacted mandatory mediation as a reciprocal statutory obligation of the employer and employee. This enactment was part of a significant change in the workers' compensation law following recommendations of a Blue Ribbon Commission. *See* P.L.1991, ch. 885, §§ A–7, A–8 (effective Jan. 1, 1993) (codified at 39–A M.R.S. § 313 (2009)). In enacting title 39–A, the Legislature established a process designed not to "comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions." *Bridgeman v. S.D. Warren Co.,* 2005 ME 38, ¶ 11, 872 A.2d 961, 965 (quotation marks omitted). We have "recognized a

legislative intent in title 39–A to encourage mediation. Indeed, we have stated that mediation pursuant to the new Act was intended to 'replace litigation whenever possible.'" *Hoglund v. Aaskov Plumbing & Heating,* 2006 ME 42, ¶ 7, 895 A.2d 323, 325 (quoting *Jasch v. Anchorage Inn,* 2002 ME 106, ¶ 17, 799 A.2d 1216, 1220). We noted in *Hoglund* that the Legislative History of the current Workers' Compensation Act

> includes a statement of Representative Anthony that "[t]he strength of [Title 39–A] is to convert from a litigated system to a system centered around mediation," 7 Legis. Rec. H–45 (3d Spec. Sess.1992), and a statement from Senator Bustin that "if this system works the way people think it's going to work, with the way the Blue Ribbon Commission thinks it's going to work, then the mediation is going to take care of all the cases." *Id.* at S–24.

2006 ME 42, ¶ 7 n. 5, 895 A.2d at 325; *see also Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 590 (Me.1996).

[¶ 20] While mandatory mediation is a step in the process of the administrative litigation of a workers' compensation claim, it is distinctly different from other stages of litigation because it requires the employee and the employer to cooperate with the mediator and it authorizes sanctions against a party who does not cooperate. 39–A M.R.S. § 313(4). It requires the employer and employee to collaborate with the goal of reaching a mutually agreeable solution. *See id.*

[¶ 21] Other courts have found injuries incurred in situations analogous to this case to be compensable. For example, in *Turner v. Industrial Claim Appeals Office,* 111 P.3d 534, 537–38 (Colo.Ct.App. 2004), the Colorado Court of Appeals held that an injury incurred while returning from a mandatory vocational evaluation

was compensable because the evaluation would not have been undertaken but for the compensable injury. In *American Manufacturers Mutual Insurance Co. v. Hernandez*, 252 Wis.2d 155, 642 N.W.2d 584, 590–91 (App.2002), the Wisconsin Court of Appeals held that an injury sustained in a car accident en route to the employee's treating physician not for medical treatment but for a final evaluation before returning to work was compensable. In *Woodrum v. Premier Auto Glass Co.*, 103 Ohio App.3d 530, 660 N.E.2d 491, 493 (1995), the Ohio Court of Appeals held that an injury suffered in a car accident when returning from an independent medical examination, required to receive benefits, was compensable.

[¶ 22] In my view, by virtue of the mandatory mediation provisions in the Workers' Compensation Act, participation in mediation is a reciprocal obligation of the employer and employee inherent in the contract of employment. *See Moreau,* 408 A.2d at 1294. Thus, travel to a mandatory mediation is an activity incident to employment, and an injury occurring during that travel falls within an exception to the going and coming rule.

[¶ 23] Accordingly, I would vacate the hearing officer's decision.