PETER LAPINSKY'S (dependents') CASE.

Worcester.    September 26, 1949. — November 9, 1949.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.  *Proximate Cause.  Evidence,* Presumptions and burden of proof.  *Statute,* Retroactive statute.  *Words,* "Substantial evidence."

Section 7A, inserted in the workmen's compensation act, G. L. (Ter. Ed.) c. 152, by St. 1947, c. 380, is procedural and applies to a claim for compensation based on the death of an employee occurring before its effective date.

An unwitnessed death by asphyxiation of an employee occurring when he fell into a sand silo on the premises of his employer brought into operation the provisions of § 7A, added to the workmen's compensation act, G. L. (Ter. Ed.) c. 152, by St. 1947, c. 380, and, because of the presumption therein created, required a finding that the claimant had sustained the burden of proving that the death arose out of and in the course of the employee's employment where the only evidence relating to the circumstances of the death was that the employee, a general handy man, was directed by his foreman to turn a switch which was about forty feet from the silo in question and which would operate to turn material into that silo, such evidence not being sufficient to rebut the presumption.

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board denying compensation under the workmen's compensation act.

The case was heard by *O'Brien*, J.

*H. J. Dumas*, for the claimants.

*J. W. Lobdell*, for the insurer.

SPALDING, J.   The question for decision in this case is whether the reviewing board erred in concluding that the

employee's death did not arise out of and in the course of his employment.

The facts may be summarized as follows: The employer is engaged in the business of manufacturing bituminous concrete. A portion of its plant consists of four large silos, arranged in line, the tops of which are about fifty feet from the ground. These silos, which are numbered 1, 2, 3, and 4, store materials used in the manufacture of concrete, silo 1 containing sand, and silos 2, 3, and 4 containing various sizes of stone. On top of the silos is a conveyor belt, so constructed that its extremities are over silos 1 and 3 or 2 and 4, as needed. The silos are filled from the top. The material is brought from below by elevator buckets which discharge their load onto the conveyor belt. The material is then carried to the silo that is being filled. Only one silo may be filled at a time, but by means of a switch the direction of the conveyor belt may be reversed so that the material will be carried to the other silo. This switch is located near a catwalk (which runs the length of the silos) and between silos 2 and 3. The catwalk is reached by a stationary ladder affixed to the structure between silos 2 and 3, and has an iron guard rail about thirty inches high along its entire length. The switch is approximately forty feet from the nearest part of silo 1.

The deceased was employed at the plant described above as a "general handy man." He had no prescribed duties and performed such tasks as were assigned to him by the foreman. On June 9, 1947, about 2:45 P.M. he was instructed by the foreman to "go up to the silos and turn the switch so as to operate the conveyor belt to discharge . . . sand into the No. 1 silo." On the following morning about 8:30 his body was discovered immersed in sand in silo 1. The cause of his death was asphyxiation. The accident was unwitnessed.

After stating that the sole instruction of the deceased was to turn the switch and that there was "no evidence that it was customary or incidental to this task that he place himself . . . near No. 1 silo," the reviewing board

"conclude[d] and therefore . . . [found] that the employee's injury and death did not arise out of and in the course of employment" and denied the claim for compensation. From a decree of the Superior Court in accordance with this decision the administratrix of the deceased (hereinafter called the claimant) appealed. The decision of the reviewing board "must be accepted as final if supported by evidence and not tainted by error of law." *Webb's Case*, 318 Mass. 357, 358.

The claimant relies, as she must, on the presumption created by G. L. (Ter. Ed.) c. 152, § 7A, inserted by St. 1947, c. 380, for without it the decision of the reviewing board would clearly be warranted. See *Foster's Case*, 242 Mass. 386; *MacDonald's Case*, 277 Mass. 418, 421. Although the accident occurred prior to the effective date of that statute, nevertheless, since it is procedural, it is applicable to this proceeding. *Goddu's Case*, 323 Mass. 397, 399–400. Section 7A reads: "In any claim for compensation, where the employee has been killed or is physically or mentally unable to testify, it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of this chapter, that sufficient notice of the injury has been given, and that the injury or death was not occasioned by the wilful intention of the employee to injure or kill himself or another." This statute, as we observed in *Goddu's Case*, 323 Mass. 397, 400, did not change the basis of liability in workmen's compensation cases, and it is still necessary to establish that the employee's injury arose "out of and in the course of his employment." Nor did it change the burden of proof, which is still on the claimant.

The reviewing board was apparently of opinion that a sufficient foundation had not been laid to put the presumption into operation. We do not agree. The employee's body was found on the premises of the employer at a place approximately forty feet from the switch which the employee had, during working hours, been directed to operate. Contrary to what the reviewing board seems to have held, it was not

necessary that the claimant establish that the employee's
injury arose out of and in the course of the employment in
order to obtain the benefit of the presumption. To hold
otherwise would be to read something into the statute that
is not there either expressly or by fair implication. Support
for our conclusion may be found in *Marra Bros. Inc.* v.
*Cardillo*, 154 Fed. (2d) 357 (C. C. A. 3), cited with approval
in *Goddu's Case*, construing a provision of the longshoremen's
and harbor workers' compensation act, U. S. C. (1940 ed.)
Title 33, § 920, which is similar to § 7A. To the same
effect is *Woloshchuck's Case*, decided this day, *ante*, 10.
And there is nothing in *Goddu's Case* to the contrary. In
that case it was conceded that the employee's injury oc-
curred in the course of his employment. In discussing
the effect of § 7A this court said, "This we think means at
least that where, as here, the injury arose in the course of
the employment, it shall, if the other statutory conditions
are met, be 'presumed' to have arisen out of the employ-
ment" (page 400). The court did not undertake to lay down
a rule as to what must be shown to put the presumption into
operation. It held merely that on the facts of that case
enough was shown. We are not to be understood as decid-
ing that mere proof of an injury with nothing whatever to
indicate that it had any connection with the contract of
employment would be a sufficient foundation for making
the presumption apply. But in the present case the proof
went beyond this.

If, as we hold, enough was shown to make the presumption
applicable, then a decision for the claimant would be re-
quired "in the absence of substantial evidence to the con-
trary." But if there was substantial evidence to the con-
trary, the presumption would disappear and the case would
have to be considered as though there had been no presump-
tion. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370,
378. *Thomes* v. *Meyer Store Inc.* 268 Mass. 587, 589. *Brown*
v. *Henderson*, 285 Mass. 192, 195. *Del Vecchio* v. *Bowers*,
296 U. S. 280, 286–287. See *Commonwealth* v. *Clark*, 292
Mass. 409, 415. We are of opinion that the evidence was

not sufficient to rebut the presumption. It was said in *Goddu's Case* that the words "substantial evidence" in § 7A mean evidence "such 'as a reasonable mind might accept as adequate to support a conclusion'" (page 401). See *Jordan Marsh Co.* v. *Labor Relations Commission*, 316 Mass. 748, 756. The only evidence here which might tend to rebut the presumption was that the employee was directed by his foreman to throw the switch; that the switch was located forty feet from silo 1; and that the employee's body was found in that silo. From this evidence it might be inferred that there was a possibility that the employee was not at a place where his duties required him to be when he met his death. Compare, however, *Bradford's Case*, 319 Mass. 621, 622–623, and cases cited. But it merely suggests a speculative possibility and falls short in our opinion of "substantial evidence to the contrary." *Goddu's Case* (page 402). It follows that since the presumption was not rebutted the decision should have been in favor of the claimant.

Certain evidence was introduced before the single member subject to the insurer's exceptions, and these exceptions were overruled by the reviewing board before which they were renewed. See *Di Clavio's Case*, 293 Mass. 259, 261. We need not determine whether this evidence was admissible, for the conclusion herein reached would be the same if the evidence had been excluded.

The decree is reversed, and a decree is to be entered remanding the case to the Industrial Accident Board for further proceedings in conformity with this opinion.

*So ordered.*