Tina E. TOOMEY

v.

CITY OF PORTLAND.

Supreme Judicial Court of Maine.

Sept. 6, 1978.

Richardson, Hildreth, Tyler & Troubh by Robert L. Hazard (orally), Portland, for plaintiff.

David A. Lourie, Asst. Corp. Counsel, (orally), William O'Brien, Jr., Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

WERNICK, Justice.

On November 22, 1972 Eugene A. Toomey died as a result of injuries sustained on November 20, 1972 in an automobile collision. At the time of his death Toomey was employed by the City of Portland as a police officer. On October 17, 1973 Toomey's widow, Tina E. Toomey, filed a petition with the Industrial Accident Commission[1] claiming compensation death benefits under 39 M.R.S.A. § 58. She alleged that her husband's death resulted from a personal injury he received on November 20, 1972 by accident arising out of and in the course of his employment.

After a hearing the Commission decided in favor of the claimant and awarded her compensation death benefits. From the Superior Court judgment entered pro forma on the Commission decree the employer City of Portland has appealed.

We deny the appeal.[2]

*1.*

As a first point on appeal, the City maintains that on all the evidence an award of compensation death benefits is not legally supportable. The City's position comprises two alternative arguments. First, the City contends that even though the employee here involved was killed as a result of the automobile collision on which the claim for compensation is based, the widow did not have the benefit of the presumption set forth in 39 M.R.S.A. § 64–A.[3] The reason

for this, argues the City, is that claimant failed to make a preliminary showing of any "link" between the collision and her deceased husband's employment with the City of Portland. Absent applicability of the presumption, it is beyond dispute, says the City, that the evidence fails to warrant an award of compensation. As its alternative contention, the City maintains that even if the presumption was in play, all of the evidence presented established *as a matter of law* that Eugene A. Toomey was outside the course of his employment when he suffered the injury which caused his death, and therefore an award of compensation is not justifiable.

1a—*"Linkage" to the Employment as a Precondition of the Applicability of the Statutory Presumption.*

In this case claimant proceeded in support of her petition by going forward with evidence, in the form of a stipulation of the parties, which established the following facts concerning the incident causing her husband's death. On November 20, 1972 claimant's husband was employed as a policeman in the Police Department of the City of Portland. On that day he was operating an automobile proceeding in a westerly direction on a public way, Route 22. The automobile came into collision with a bus operated by an agent, or employee, of the Brunswick Transportation Company for the benefit of students at the University of Maine at Portland-Gorham. The collision occurred "just over the City of Portland line, within the City of Westbrook."

The City contends that this evidence shows that the collision causing Toomey's death occurred "off the premises" of Too-

1. Effective July 6, 1978 the name of the Industrial Accident Commission was changed to Workers' Compensation Commission. P.L. 1978, Chapter 612.

2. The claimant took a cross appeal as to a ruling of the Commissioner which allowed the City of Portland to file a late answer on condition that it be limited to particular issues. Our denial of the employer City's appeal renders moot the claimant's cross appeal.

3. This statute provides:

"In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, there shall be a rebuttable presumption that the employee received a personal injury by accident arising out of and in the course of his employment, that sufficient notice of the injury has been given, and that the injury or death was not occasioned by the willful intention of the employee to injure or kill himself or another."

mey's employment, and hence the claimant failed preliminarily to establish such a "linkage" to Toomey's employment as the City asserts is a necessary antecedent to trigger the statutory presumption into play for claimant's benefit.

■ We begin the analysis of this contention by evaluating the City's reliance on the law of New York and Massachusetts. We note, initially, that the statutory presumption in New York, as relating to ". . . *any* proceeding for the enforcement of a claim for compensation . . ." [4] (emphasis supplied), so markedly exceeds the more restricted compass of the Maine presumption that, prima facie, different policy considerations seem to be operating. This factor alone would tend to diminish the significance of New York case law as a guide to the formulation of Maine law. In any event, however, we agree with the view expressed by the Massachusetts Court in *Woloshchuck's Case*, 325 Mass. 10, 88 N.E.2d 640, 641 (1949) which rejects such kind of preliminary linkage as the case of *Daus v. Gunderman & Sons*, 283 N.Y. 459, 28 N.E.2d 914 (1940) establishes as the law of New York, because it

". . . gives less weight to the statutory presumption than our Legislature seems to have intended." [5]

Turning, then, to the Massachusetts law as a source of guidance, more particularly since the language of the Maine statute parallels that of Massachusetts and the presumption arises from similarly limited circumstances, we find the Massachusetts case law inconclusive. *Woloshchuck's Case*, supra, emphasizes that *Goddu's Case*, 323 Mass. 397, 82 N.E.2d 232 (1948) was not a holding that the statutory presumption remains inapplicable until it first is made to appear that the injury underlying the compensation claim was received "in the course of the employment." The Court makes the point that such a view would denigrate the force of the presumption as supplying *every* element necessary to justify an award of compensation, including that the personal injury be received "in the course of the employment." Moreover, after thus clarifying *Goddu's Case*, the Court decides *Woloshchuck's Case* itself by treating the statutory presumption as in play without undertaking further inquiry whether or not there must be a showing of any kind of linkage to the employment as a necessary precondition of the applicability of the statutory presumption.

The only other indication as to the Massachusetts law on the subject of preliminary linkage appears in *Lapinsky's Case*, 325 Mass. 13, 88 N.E.2d 642 (1949), decided the same day as *Woloshchuck's Case*. There, after stating that the circumstances before it would be sufficient to satisfy a requirement, if any, of a preliminary showing of linkage to the employment, the Court adds the bare dictum:

"We are not to be understood as deciding that mere proof of an injury *with nothing*

---

4. The New York presumption appears in 64 McKinney's Consolidated Laws of New York Annotated, Chapter 67 as follows:

" § 21. *Presumptions*
"In any proceeding for the enforcement of a claim for compensation under this chapter, it shall be presumed in the absence of substantial evidence to the contrary:
"1. That the claim comes within the provision of this chapter;
"2. That sufficient notice thereof was given;
"3. That the injury was not occasioned by the willful intention of the injured employee to bring about the injury or death of himself or of another;
"4. That the injury did not result solely from the intoxication of the injured employee while on duty;

"5. That the contents of medical and surgical reports introduced in evidence by claimants for compensation shall constitute prima facie evidence of fact as to the matter contained therein." L. 1922, c. 615; amended L. 1923, c. 568; L. 1946, c. 268 § 1.

5. *Daus v. Gunderman & Sons*, preconditions the applicability of the New York statutory presumption on a preliminary showing by petitioner that the employee's injury occurred *in the course of the employment*. This ignores that the content of the presumption includes in terms the "course of the employment", thus relieving the petitioner of any initial burden to show "course of the employment."

*whatever* to indicate that it had *any* connection with the contract of employment would be a sufficient foundation for making the presumption apply." (emphasis supplied) (88 N.E.2d at 644)

Apart from this caveat in *Lapinsky's Case*, we derive no further guidance from the Massachusetts cases as to the existence vel non of a requirement for a preliminary showing of linkage to the employment or, if there be such a requirement, the kind of showing necessary, rather than sufficient, to satisfy it.

From the foregoing evaluation of the law elsewhere which might be of assistance to us in the formulation of Maine law we conclude that we are left, essentially, to arrive at our own independent conclusions by a careful analysis of those features of the Maine statute that we take to be the significant signposts of legislative intendment.

■ Proceeding with such analysis, we observe, first, that the clause, ". . . *where* the employee has been killed, or is physically or mentally unable to testify . . ." (emphasis supplied) is an ambiguous modifier of the phrase which precedes, "[i]n any claim for compensation . . ." It is broad enough to include not only the incident upon which the claim for compensation is based but also an incident which occurs thereafter but prior to the hearing on the compensation claim—so long as in either instance the employee has by death, or otherwise, been rendered physically or mentally unable to testify at the hearing.

Despite such potentially expansive compass of particular textual language in Section 64–A, we believe the true intendment of the Legislature, as reflected by the entirety of the statutory language, is more accurately depicted by construing the ambiguous phrase under consideration as having the meaning which would be conveyed were the language: "In any claim for compensation, [based on an incident] where the employee has been killed, or . . . [otherwise rendered] physically or mentally unable to testify, . . . ."

Thus interpreted, the statute states expressly two antecedents which must appear to trigger the presumption into play: (1) an incident which causes the employee to be killed or otherwise made physically or mentally unable to testify in aid of (2) a pending claim for compensation relating to that incident.

The position taken by the City on appeal raises the issue whether, even if not expressly stated in the statute, a third antecedent must be held necessarily implicit: the existence of additional facts which in some way relate such incident to the employee's employment—the employment being the universe of discourse by virtue of which alone a claim for compensation can be held justifiable.

■ We think that a fair assessment of the legislative intendment demands the conclusion that it was the Legislature's premise in creating the Section 64–A presumption to avoid engendering, or encouraging, the filing of hopeless claims. Since, in addition, the Legislature must be taken as enacting laws to guide the conduct of rational persons, it is a corollary of the above-mentioned legislative premise that the presumption is intended to be in play only for the benefit of a compensation claimant whose filing of a claim is a *rational* act.

■ We therefore conclude that implicit in Section 64–A is a third prerequisite to the applicability of the presumption therein established. Recognizing that the presumption is calculated to serve, at least in part, as the functional substitute for evidence which, within bounds of reason, may be projected as capable of being provided by the testimony of the employee had the employee not been disabled from testifying, we delineate this third prerequisite for triggering the applicability of the presumption as follows. There must be evidence presented of circumstances which indicate that the bringing of a claim for compensation is a rational act—that is, that the incident to which the claim relates has some rational potential of eventuating in an award of compensation when it is deemed

supplemented by testimony which, within reasonable limits, may be conceived as potentially forthcoming from the employee were the employee available as a witness.

■ Applying this implied requirement of preliminary "linkage" to this case, we sustain the Commissioner's conclusion that claimant had the benefit of the presumption. The stipulation of facts presented by claimant gave sufficient indication that the filing of a claim was a rational act. The circumstances revealed by the stipulation indicate rational potential for an award of compensation were claimant to have the benefit of testimony projected within the limits of reason as capable of being provided by the employee, if available.

■ We reject the contention of the City of Portland that such rational potential was dissipated *as a matter of law* by the stipulated fact that the ". . . accident occurred just over the City of Portland line, within the City of Westbrook." Even if we assume, without deciding, that this fact shows an injury sustained "off the premises" of the employment, it cannot be said—more particularly since the injury was received practically at the boundary of the hypothesized employment "premises"— that as a matter of law the rational potential for an award of compensation was destroyed. As indicated in our recent opinion in *Abshire v. City of Rockland*, Me., 388 A.2d 512 (1978), that a city police officer sustains an injury on a public street which may not be technically part of the employment "premises" does not *per se* make unreasonable the potential for an award of compensation. The *Abshire* opinion discloses that especially in the case of a police officer a variety of additional circumstances may reasonably be projected as capable of being supplied by the testimony of the employee, were it available, to justify an award of compensation based on an incident occurring off, but close to, the technical boundary of the employer's "premises." These could include the "special errand" circumstances involved in the actual deci-

sion of *Abshire* or the many kinds of circumstances alluded to in footnote 3 of the opinion in that case. *Abshire* thus reveals this Court's recognition that police officers are within a grouping of employees who have in common that they may well be engaged in work-related activity when they are on a public way, whether within or reasonably close to the area constituting the primary locus of their employment.

In this case the claimant came forward with evidence sufficient to put the statutory presumption in play for her benefit.

### 1b—*The Justifiability of the Award with the Presumption in Play.*

The City maintains that even with the presumption applicable for claimant's benefit, the Commissioner erred in making an award of compensation because, says the City, the totality of the evidence established *as a matter of law* that an award of compensation must be denied.

We disagree.

We interpret the Commissioner as following the approach to rebuttable presumptions set forth in *Hinds v. John Hancock Mutual Life Insurance Company*, 155 Me. 349, 155 A.2d 721 (1959) and as concluding on that approach that the evidence left it a question of fact for his determination whether the presumption had been rebutted and thereby made to disappear from the case. The Commissioner then decided this question of fact—finding that the presumption was not rebutted, therefore continued in force in the case and that its persistence in the case

". . . compel[led] a favorable decision to the petitioner on the issue of whether the accidental death arose out of and in the course of his employment."

■ The City of Portland maintains that this decision of the Commissioner must be overturned on appeal because, argues the City, the evidence was sufficient to establish *as a matter of law* that the presumption had been rebutted and made to vanish from the case.[6]

---

6. *Hinds* recognizes that while it is ordinarily a question of fact it can become a question of law whether a presumption has been rebutted

and thereby deprived of further force and effect in a case. (155 Me. at 366, 155 A.2d 721)

We decide that the Commissioner was correct in holding that the evidence left it a question of fact whether the presumption had been rebutted. This being so, the Commissioner's determination of that factual issue is binding on appeal.

The statutory presumption is operative, here, to serve a relatively unique function. Because it bears on "arising out of and in the course of his employment", it concerns not the existence of a single readily perceptible fact but rather relates to an ultimate, and somewhat complex, legal conclusion which, generally, is reached by evaluating the combined effect of an aggregate of subsidiary facts. For this reason, in the present context any single fact which the employer's presentation of countervailing evidence may indicate will tend to have much less impact than it would were we concerned with the effect of a presumption concerning the existence, or non-existence, of a particular fact more readily capable of being proved by direct perceptions.

Keeping this significant point in mind, we agree with the Commissioner that the evidence presented by the City of Portland failed to rebut the presumption, in the manner in which it here functioned, as a matter of law—that is, to achieve the force of preventing rational and unprejudiced minds from entertaining reasonable differences of view concerning whether it was as probable as not that the employee was outside the course of his employment when the automobile collision causing his death occurred. See *Hinds v. John Hancock*, supra at 366, 155 A.2d 721.[7]

The evidence showed conclusively that the automobile collision occurred "just over the City of Portland line, within the City of Westbrook." The evidence also showed that the employee was operating his own personal vehicle. Yet, even if it be assumed that these facts would require a rational mind to find it as probable as not that the accident occurred "off the premises" of the employer City of Portland,[8] such fact alone would not establish as a matter of law—i. e., so cogently as to foreclose rational difference of view—that a police officer in uniform (as the evidence also shows) was as probably as not acting outside the course of his employment, especially when the injury at issue is received at a place practically at the boundary of the employment "premises."

The further question, then, is whether the City of Portland produced further evidence rendering irrational any view other than that it was as probable as not that Officer Toomey was acting outside the course of his employment when the automobile collision occurred. As requiring an affirmative answer to this question, the City points to evidence which it contends compels a finding that it was as probable as not that the employee was going home from work. The evidence was that the employee's home was in Hollis, which is westerly of Portland, and at the time of the collision

7. The City argues that the Commissioner stated his conclusion in this regard by using language which indicated that he wrongly conceived the *Hinds* rule to require, if the presumption is to be taken as rebutted, that the countervailing evidence must show that it is *more* probable than not—rather than *as* probable as not—that the employee was outside the course of his employment. While such phrasing *does* appear in the Commissioner's statement of his finding, we are satisfied by the *entirety* of the Commissioner's discussion of the *Hinds* rule that the Commissioner neither misconceived nor misapplied that rule. We find his basic thinking, and conclusions, to have been properly directed to the question whether the countervailing evidence produced by the City rebutted the statutory presumption by showing that it was *as* probable as not that the employee was outside the course of his employment at the time the automobile collision occurred.

8. Although we have made this assumption arguendo, it is not plain that it would be correct. Particularly in the case of a police officer, the determination of what the "premises" of his employment are may involve various legal questions concerning the authority of the police officer in the multitudes of situations that might arise on the public streets, whether or not the place of the incident is strictly within the geographical confines of the municipality which is the employing entity.

the employee was driving in a general westerly direction at a place consistent with his being on a direct route to Hollis. The City also adverts to the following testimony of the claimant, herself:

"Q. Can you tell me how your husband—are you aware of how your husband got from the City of Portland to Hollis, normally?

"A. You mean the route he took?

"Q. The route for this vehicle?

"A. Yes. It was usually the same route. The same one he took going home on the day of the accident, but it could vary. He didn't tell me, you know, today I'm going this way I'll be coming home that way.

"Q. From your statement then it is your belief that he was on his way home at the time of the accident?

"A. I expected him home."

The foregoing evidence, however, is not sufficient to exclude as a reasonable view by a rational mind that it was more probable than not that the employee was not going home at the time of the collision. The testimony of the widow about the route was too vague to be of significance. Her statement about her "expectation" was not only basically unresponsive to the question asked but also was vague as to the time when, according to her "expectation", her husband would be coming home. Similarly, it does not really assist the evaluation of the probabilities of whether or not the employee was actually going home, especially in light of the rather large distance between Hollis and Portland, that at the time of the collision the employee was "just over" the boundary line between Portland and Westbrook and happened to be proceeding in the same general direction as Hollis lies from Portland and was at a place on a direct route from Portland to Hollis.

It was thus not established as a matter of law that it was as probable as not that at the time of the collision the employee was actually going home. It remained rationally open to the fact-finder to find, as his determination of fact, that more probably than not the employee, as a police officer in uniform, was not going home. As a determination of fact, such finding will not be upset on appeal. Moreover, upon a finding of fact that the employee was not going home when the collision occurred, it was further open to the Commissioner to find as a fact that notwithstanding that the employee was operating his own personal vehicle and had arrived at a place "just over" the boundary line separating the City of Portland from the City of Westbrook, it was more probable than not that he was acting in the course of his employment.

In sum, on all of the evidence it was a genuine question of fact—and was not settled as a matter of law—whether the presumption had been rebutted and caused to vanish from the case. The Commissioner's determination of this *issue of fact*, i. e., that the Commissioner found it more probable than not that the employee was in the course of his employment—rather than *as* probable as not that he had departed from the course of his employment,—being a determination of *fact*, must be taken as final and binding on appeal.

With the presumption thus surviving the onslaught of the countervailing evidence and continuing in play in the case, the Commissioner's ultimate conclusion was correct that the persistence of the presumption

"compels a favorable decision to the petitioner on the issue of whether the accidental death arose out of and in the course of his employment."

### 2.

The last issue raised by the City on appeal concerns the notification of the employer required by 39 M.R.S.A. §§ 63, 64.

 This question must be considered in light of our decision herein that the Section 64–A presumption was in play for claimant's benefit, and it was therefore presumed, as necessary to assist claimant in prosecuting her claim, that "sufficient notice of the injury . . . [was] given." Even if, therefore, it be taken as the law of this case that claimant bore the ultimate

burden of proving by a preponderance of the evidence that the employer was sufficiently notified, see *Guay v. City of Waterville et al.*, 152 Me. 146, 147, 125 A.2d 665 (1956),[9] the applicability of the statutory presumption made it the burden of the employer at least to come forward with evidence rebutting the presumption and eliminating it from the case. The City, however, did not produce such evidence to rebut the presumption of notification. This being so, the presumption of sufficient notification continued in force in the case and required the conclusion that the employer had been duly notified.

The City of Portland contends, however, that the Commissioner prevented it from presenting evidence to rebut the presumption. This was the effect, says the City, of various rulings by the Commissioner which, as stated in the Commissioner's opinion, confined the parties ". . . to proceed[ing] on the *merits*." (emphasis supplied)

■ The weakness in the City's contention is that the City never undertook to test what the Commissioner considered the "merits." At no time had the Commissioner made clear by any ruling whether he regarded it as the ultimate burden of the claimant, aided by the Section 64–A presumption, to prove the existence of sufficient notification to the employer, or whether in his view notification was a matter of affirmative defense such that the City bore the ultimate burden of proving absence of notification. Thus, the Commissioner's ruling that the parties proceed on the "merits" was ambiguous. If, in accordance with the dictum in *Guay v. City of Waterville*, supra, it was the claimant's ultimate burden to prove the existence of adequate notification, the notification issue could reasonably be regarded as part of the "merits."

■ We cannot say, therefore, that the record shows that the Commissioner denied the City the right to present evidence on

9. We make this assumption because this case was processed before the Commission adopted the Rules of Evidence which, by Rule 301(a),

the notification issue. The "merits" would include the notification question were the Commissioner to deem it a necessary element of claimant's case. Hence, the City's failure to attempt to offer evidence regarding notification, for the Commissioner either to admit or exclude—thereby to indicate whether or not he conceived the notification issue to be part of the "merits" of the case,—is fatal to the City's contention that the Commissioner denied the City the right to seek to rebut the presumption of notification.

The entry is:

Appeal of the employer City of Portland denied.

Cross-appeal of claimant dismissed as moot.

Further ordered that the employer City of Portland pay to the claimant Tina E. Toomey an allowance of $550.00 for counsel fees plus her reasonable out-of-pocket expenses for this appeal.

McKUSICK, C. J., and GODFREY, J., did not sit.

would require the employer City to bear the ultimate burden of proving lack of notification.