MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2015 ME 4
Docket:       WCB-13-541
Argued:       November 5, 2014
Decided:      January 22, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.[*]

ESTATE OF GREGORY SULLWOLD

v.

THE SALVATION ARMY et al.

HJELM, J.

[¶1]    The Salvation Army appeals from an order of the Workers' Compensation Board Appellate Division affirming the decision of the Board (*Knopf, HO*) to grant an award of compensation to the estate of Gregory Sullwold. The Salvation Army contends that the hearing officer improperly applied the rebuttable presumption in 39-A M.R.S. § 327 (2014) to conclude that Sullwold's death from a heart attack was a personal injury arising out of and in the course of employment. Because we find no error in the hearing officer's application of the presumption, we affirm the judgment.

---

[*]    Silver, J., sat at oral argument and participated in the initial conference but retired before this opinion was issued.

## I. BACKGROUND

[¶2]  The hearing officer found the following facts.  On February 23, 2010, Gregory Sullwold died of a heart attack while exercising on a treadmill in his home.  At the time of his death, he was employed by the Salvation Army as a portfolio specialist and comptroller and was responsible for overseeing investor relations and the financial interests of the Salvation Army's Eastern Division, which were then valued at approximately $2.5 billion.

[¶3]  Sullwold had lived in Maine since 2009, when he moved from New York City, where the Eastern Division's office is located.  The Salvation Army permitted him to work remotely from home, supplying him with a computer, BlackBerry, and other office materials.  On the day of his death, Sullwold started working at 8:30 a.m. in his home office and continued working until about 3:30 p.m., when he took a break to walk on the treadmill, bringing his BlackBerry with him.  About thirty minutes later, his wife found him unconscious on the floor with the treadmill still running and the BlackBerry next to him.  Emergency medical professionals were called, but were unable to revive him.

[¶4]  Sullwold had previously suffered a heart attack in 1993.  As a result, his doctors recommended that he make lifestyle changes by dieting and exercising regularly, which he did.  He continued to be treated for coronary artery disease and atherosclerosis, and shortly before his death he reported to his doctor that he was

experiencing chest pain while walking his dog. There is no evidence that Sullwold reported any concerns about his workload or work-related stress to any of his doctors, although shortly before his death he suffered a panic attack, which he attributed to "overload." His wife and coworkers also reported that he experienced stress from working long hours and traveling frequently, and that this stress was exacerbated by increased donor contributions after September 11, 2001, and the effect of the 2008 economic downturn on the Salvation Army's finances.

[¶5] On January 28, 2011, Sullwold's widow filed a petition for award of compensation with the Workers' Compensation Board, alleging that Sullwold's "work resulted in a myocardial infarction and cardiac arrest." Following a hearing, the Board granted the petition. The Salvation Army filed a motion for findings of fact and conclusions of law pursuant to 39-A M.R.S. § 318 (2011),[1] and the hearing officer issued a decision reaffirming the original order and making further findings of fact regarding her determination that work stress was a major causal factor in Sullwold's death.

---

[1] Title 39-A M.R.S. § 318 has since been amended to reflect the reestablishment of the Appellate Division. P.L. 2013, ch. 63, §§ 10, 16 (effective October 9, 2013) (codified at 39-A M.R.S. § 318 (2014)).

4

[¶6]     The Salvation Army then filed appeals with the Workers'
Compensation Board Appellate Division and with this Court.[2]  In March 2013, we
dismissed the appeal to this Court, holding that the case was subject to initial
review by the Appellate Division.  *See Estate of Sullwold v. Salvation Army*,
2013 ME 28, ¶ 8, 63 A.3d 1061.  In November 2013, the Appellate Division
affirmed the Board's award of compensation, concluding that the hearing officer
did not err in finding that the evidence triggered the presumption found in
39-A M.R.S. § 327 and that the Salvation Army failed to rebut the presumption.
We granted the Salvation Army's petition for appellate review pursuant to
39-A M.R.S. § 322 (2014).

## II. DISCUSSION

[¶7]   The Salvation Army argues on this appeal that the hearing officer
erroneously applied the presumption in 39-A M.R.S. § 327 and that she
misconstrued the nature of the burden needed to rebut the presumption.  In
determining whether the hearing officer correctly applied the presumption, "[w]e
accept the hearing officer's findings of fact," *Damon v. S.D. Warren Co.*,
2010 ME 24, ¶10, 990 A.2d 1028, but review questions of law, including statutory
interpretation, de novo, *see McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶ 7,

---

[2]    The Appellate Division had recently been re-created, and there was uncertainty over whether the
appeal was appropriately directed to the Appellate Division or the Law Court.  *See Estate of Sullwold v.
Salvation Army*, 2013 ME 28, ¶ 4, 63 A.3d 1061.

804 A.2d 406. "When construing provisions of the Workers' Compensation Act, our purpose is to give effect to the Legislature's intent." *Graves v. Brockway-Smith Co.*, 2012 ME 128, ¶ 9, 55 A.3d 456 (quotation marks omitted).

A.    Application of the Section 327 Presumption

[¶8]  Title 39-A M.R.S. § 201(1) (2014) provides that an employee covered by the Maine Workers' Compensation Act "must be paid compensation" if he or she "receives a personal injury arising out of and in the course of employment." Pursuant to 39-A M.R.S. § 327,

> In any claim for compensation, when the employee has been killed or is physically or mentally unable to testify, there is a rebuttable presumption that the employee received a personal injury arising out of and in the course of employment, that sufficient notice of the injury has been given and that the injury or death was not occasioned by the willful intention of the employee to injure or kill the employee or another.

The Salvation Army contends that the evidence was not sufficient to generate the statutory presumption that Sullwold's death arose out of and in the course of his employment and that the hearing officer erred in applying the presumption in this case.

6

[¶9]  In *Toomey v. City of Portland*, 391 A.2d 325, 330 (Me. 1978), we interpreted the virtually identical precursor statute to section 327.[3]  There, we concluded that the statute contained an "implied requirement of preliminary linkage" between the employment and the incident underlying the claim.  *Id.* at 331 (quotation marks omitted).  Because the Legislature intended to allow the presumption "only for the benefit of a compensation claimant whose filing of a claim is a rational act," there must be evidence that, were the employee available to testify, the incident at issue would have "some rational potential of eventuating in an award of compensation."  *Id.* at 330-331.  Under this standard, "hopeless claims" do not receive the benefit of the presumption, but claims that have a rational possibility of success do.  *Id.*  Whether the presumption arises is determined based on the evidence actually presented and "testimony which, within reasonable limits, may be conceived as potentially forthcoming from the employee were the employee available as a witness."  *Id.* at 330-331.  Therefore, the presumption is properly invoked here if the evidence presented to the hearing officer, combined with any facts to which Sullwold may reasonably have testified if he were alive, could rationally result in an award of compensation.

---

[3]  The statute at issue in *Toomey* was 39 M.R.S.A. § 64-A (1978), which provided: "In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, there shall be a rebuttable presumption that the employee received a personal injury arising out of and in the course of his employment."  *See Toomey v. City of Portland,* 391 A.2d 325, 328 (Me. 1978)

[¶10]  In order for the estate's claim to be successful without the benefit of the presumption, the estate would have to establish affirmatively that the injury (1) occurred in the course of the employment and (2) arose out of the employment. *See* 39-A M.R.S. § 201(1).  The hearing officer did not err in determining, based on the evidence presented to her and Sullwold's inferred testimony, that there was a rational prospect that the estate could have proved both elements.  Consequently, the hearing officer properly applied the presumption created by section 327.

[¶11]  As to the first element, the evidence in the record supported the hearing officer's conclusion that the estate could reasonably have proved that Sullwold's death occurred in the course of employment.  Whether an injury arose in the course of employment depends on "the time, place, and circumstances under which an injury occurs, the place where the employee reasonably may be in performance of the employee's duties, and whether it occurred while fulfilling those duties or engaged in something incidental to those duties." *Feiereisen v. Newpage Corp.*, 2010 ME 98, ¶ 6, 5 A.3d 669 (quotation marks omitted).  Here, the hearing officer found that, although Sullwold was walking on the treadmill at the time of his death, his injury occurred during work hours, in a place that the Salvation Army sanctioned for his work, and while he was using the BlackBerry that the Salvation Army provided to him for his work.  In fact, as the hearing officer observed, Sullwold's use of a treadmill to exercise allowed him to work

while exercising. Even without anticipating how Sullwold would have testified if he had been available, the evidence presented to the hearing officer was sufficient to demonstrate that this part of the claim was not "hopeless" and that there was a "rational potential" for success. *See Hall v. State*, 441 A.2d 1019, 1021 (Me. 1982) (applying the section 327 presumption to an employee who was injured at his place of employment, but while engaged in an activity that had not been sanctioned by his employer).

[¶12] The evidence before the hearing officer also supported the conclusion that the estate had a rational chance of proving the second element—that Sullwold's injury arose out of his employment. As a general matter, for an injury to arise out of employment, "there must be some causal connection between the conditions under which the employee worked and the injury, or that the injury, in some proximate way, had its origin, its source, or its cause in the employment." *Feiereisen*, 2010 ME 98, ¶ 6, 5 A.3d 669 (quotation marks omitted). More specifically, pursuant to 39-A M.R.S. § 201(4) (2014), an injury, such as Sullwold's heart attack, resulting from a pre-existing physical condition "is compensable only if contributed to by the employment in a significant manner." *See Celentano v. Dep't of Corr.*, 2005 ME 125, ¶ 17, 887 A.2d 512. The hearing officer found that "Ms. Sullwold testified convincingly about the stress her husband experienced," including the demands of frequent travel, long workdays,

and the effects of the economic recession. In particular, Sullwold "typically began working early in the day and worked well into the evening," and "[s]ometimes at night he would check emails and news on world markets." Shortly before his death, he suffered a panic attack that he attributed to the demands of his job. Based on this testimony, the hearing officer found that Sullwold "was under extraordinary and relentless stress in performing his duties."

[¶13] The hearing officer also found, based on the testimony of a medical expert, that Sullwold's "longstanding, chronic and relentless work stress significantly accelerated and combined with his underlying coronary [atherosclerotic] heart disease, which resulted in sudden cardiac death." Although there was competing evidence that factors unrelated to Sullwold's employment may have contributed to his death, the hearing officer did not err in concluding that the evidence of work-related stress could rationally result in a determination that the employment contributed "in a significant manner" to the fatal heart attack and that it therefore arose out of his employment.

[¶14] In addition to the facts found by the hearing officer, it was also reasonably possible based on the evidence in the record that, had Sullwold been available, he would have augmented the record by testifying that he was under significant work-related stress and that he was engaged in work-related activities at the time of his death. Therefore, because the actual evidence, both with and

without Sullwold's possible testimony, created the rational potential for an award of compensation, the hearing officer did not err in invoking the presumption created by section 327 that Sullwold's fatal injury arose out of and in the course of his employment.

B.      Burden Shifting Pursuant to the Section 327 Presumption

[¶15]  The Salvation Army also contends that the hearing officer erred, after applying the section 327 presumption, by shifting the burden of persuasion to the Salvation Army to prove that Sullwold's death did not arise out of or in the course of employment.   Regardless of which party bears the ultimate burden of proof when the presumption arises, however, the hearing officer did not shift the burden of persuasion to the Salvation Army in this case.

[¶16]   In *Toomey*, we followed the approach set forth in *Hinds v. John Hancock Mut. Life Ins. Co.*, 155 Me. 349, 363-64, 155 A.2d 721 (1959), which held that a presumption is rebutted when evidence is produced that makes it

as probable as not that the presumed fact does not exist.[4]  391 A.2d at 332.  In *Hall*, however, we held that "the employer rather than the employee bears the ultimate burden of proof on the question of whether the injury arose out of and in the course of employment."  441 A.2d at 1021.  Our holding in *Hall* was predicated on the applicable provision of the Maine Rules of Evidence, which at the time governed Workers' Compensation Commission proceedings.  *See id.* at 1021 n.2; *Johnson v. S.D. Warren*, 432 A.2d 431, 436 (Me. 1981).  Pursuant to M.R. Evid. 301(a), a presumption is rebutted with proof "that the nonexistence of the presumed fact is more probable than its existence."  The Salvation Army argues here that, because the Legislature has since abrogated the application of the Rules of Evidence to Workers' Compensation Board proceedings, *see* 39-A M.R.S. § 309(2) (2014), the Board should reinstate the *Toomey* approach that requires that the employee ultimately prove that the injury arose out of and in the course of employment, and abandon the approach followed by *Hall* and the Maine Rules of Evidence, which shifts the burden of persuasion to the employer.

---

[4]  Although the parties and the Appellate Division recite that the Court in its pre-*Hall* cases shifted the "burden of production" to the employer, that characterization is not accurate.  The burden of production merely requires that a party produce "*some* evidence to persuade a reasonable fact-finder" that a factual proposition is true.  *Farris v. Georgia-Pacific Corp.*, 2004 ME 14, ¶ 16, 844 A.2d 1143 (emphasis added); *see also Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 18, 66 A.3d 7 (stating that in order to meet the burden of production, a party must "present sufficient evidence to raise a genuine issue of fact . . .").  *Hinds* and *Toomey*, however, require that, for the employer to rebut the presumed fact, "the evidence [must] satisf[y] the jury or factfinder that it is as probable that the presumed fact does not exist as that it does exist."  *Hinds v. John Hancock Mut. Life Ins. Co.*, 155 Me. 349, 363-64, 155 A.2d 721 (1959).  Although that rule stops "short of shifting the burden of persuasion," *id.* at 364, it nonetheless requires a higher level of proof than would merely satisfy a burden of production.

[¶17]   In this case, however, the hearing officer did not shift the burden of persuasion as prescribed by *Hall*, but instead applied *Toomey*, which is exactly what the Salvation Army argues she should have done.   In addressing whether or not the Salvation Army rebutted the statutory presumption, the hearing officer quoted *Toomey* at length and invoked the "as probable as not" standard articulated in that case.   She stated that she was "[a]pplying this standard to the instant case," and then determined that the Salvation Army "failed to rebut the presumption." Therefore, the hearing officer's analysis makes clear that she did not impose on the Salvation Army the burden of persuasion that it contends would have constituted an error of law.

[¶18]   Because the hearing officer in fact applied the burden that was more favorable to it, the Salvation Army would not have succeeded under either standard.   Because the Salvation Army has failed to demonstrate prejudice arising from the hearing officer's decision, we need not address the nature of the burden necessary to rebut the statutory presumption.[5]  *See Hall*, 441 A.2d at 1022.

The entry is:

Judgment affirmed.

---

[5]  Although the Appellate Division concluded, as we do, that the Board held the Salvation Army to the lower burden of demonstrating only that the evidence was in equipoise, it also determined that *Hall* remains good law, meaning that to rebut the presumption created by section 327, the employer bears the burden of persuasion to disprove the presumed facts.  For the reasons set out in the text, however, we decline to reach that issue of law.

**On the briefs and at oral argument:**

Arthur J. Lamothe, Esq., Brunswick, for appellant The Salvation Army

G. William Higbee, Esq., McTeague Higbee, Topsham, for appellee Estate of Gregory Sullwold

Workers' Compensation Board Appellate Division case number 12-0002
FOR CLERK REFERENCE ONLY