MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 99
Docket:       WCB-14-203
Argued:       February 10, 2015
Decided:      August 4, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.
Concurrence:  SAUFLEY, C.J.

WORKERS' COMPENSATION BOARD ABUSE INVESTIGATION UNIT

v.

NATE HOLYOKE BUILDERS, INC., et al.

JABAR, J.

[¶1]   The Workers' Compensation Board Abuse Investigation Unit (AIU) appeals from a decision of the Workers' Compensation Board Appellate Division vacating the Workers' Compensation Board's (*Dunn, HO*) imposition of a $30,000 penalty on Nate Holyoke and his construction company, Nate Holyoke Builders, Inc. (collectively Holyoke), for violating the insurance coverage requirements of the Workers' Compensation Act (WCA).   The AIU contends that the Appellate Division erred in construing 39-A M.R.S § 105-A(3) (2014) as a limitation on the Board's authority to sanction construction contractors that misclassify employees as independent contractors.   Holyoke cross-appeals, arguing that the Board erred in finding that Holyoke misclassified nine employees as independent construction subcontractors, and that the Board and Appellate Division both erred in

2

determining that Holyoke failed to "secure . . . compensation" for all of its employees, in violation of 39-A M.R.S. §§ 401 and 403 (2011).[1] Holyoke additionally contends that its reliance on the Board's predeterminations should estop the Board from imposing sanctions.

[¶2] We conclude that Holyoke complied with sections 401 and 403 by maintaining workers' compensation insurance policies that would have provided compensation to any worker who was determined to be an employee entitled to benefits. Because Holyoke complied with the WCA's coverage requirements, we do not address Holyoke's estoppel contention, the proper classification of Holyoke's workers, or the correct construction of section 105-A(3). We therefore affirm the Appellate Division's decision vacating the Board's imposition of penalties on Holyoke, albeit for a different reason than that expressed by the Appellate Division.

## I. FACTS

[¶3] Nate Holyoke Builders, Inc. has historically had some workers whom it classified as employees and other workers whom it classified as independent contractors. In 2009, after being assessed a workers' compensation insurance premium adjustment of $50,000 and learning that its insurer required

---

[1] Title 39-A M.R.S. §§ 401 and 403 have both been amended since the AIU complained against Holyoke in 2011, though the amendments are not relevant in this case. *See, e.g.,* P.L. 2013, ch. 87, § 1 (effective Oct. 9, 2013) (codified at 39-A M.R.S. § 401(1)(C) (2014)); P.L. 2013, ch. 172, § 1 (effective Oct. 9, 2013) (codified at 39-A M.R.S. § 403(4-A) (2014)).

predeterminations of independent contractor status in order to calculate premiums, Holyoke began requiring the workers whom it classified as independent contractors to obtain predeterminations from the Board.[2] In 2010 and 2011, the Board granted predeterminations of independent contractor or construction subcontractor status to the workers whom Holyoke classified as independent contractors. Those workers then presented Holyoke with certificates of that status.

[¶4]    During this two-year period, the company maintained workers' compensation insurance policies and paid premiums that were based in part on payroll to workers classified as employees. The premiums that Holyoke paid did not reflect remuneration remitted to workers classified as independent contractors. However, Holyoke's workers' compensation policies provided for the payment of benefits to any worker who was entitled to them pursuant to the WCA, even if that worker was initially classified as an independent contractor for payroll and premium purposes. The policies specified that their premium basis included payroll and remuneration paid to any person engaged in work that could give rise to an entitlement to the payment of benefits. The policies further specified that

---

[2]  Pursuant to 39-A M.R.S. § 105 (2014), a worker may apply to the Board for a predetermination of independent contractor or construction subcontractor status. If granted, the predetermination "creates a rebuttable presumption that the determination is correct in any later claim for benefits." *Id.* § 105(1)(A), (1-A)(A). If the predetermination does not withstand scrutiny when raised in a claim for benefits, the insurer will either return excess premium collected or charge the employer a premium adjustment. *Id.* § 105(2). The predetermination statute thus guarantees that if an insurer pays benefits to an employee who was misclassified as an independent contractor, the insurer can be compensated for those payments by assessing premium adjustments against the employer.

4

their final premiums would be calculated after an audit to determine the premium basis and "the proper classifications" applicable to the covered work. In the event that Holyoke's estimated premiums were less than its final premium, the company would be liable for the difference.[3]

[¶5] In October 2010, the Board selected Holyoke for an audit to verify its compliance with the insurance coverage requirements of the WCA. After finding that some of the workers whom Holyoke classified as independent contractors had not secured individual workers' compensation policies, the Board's auditor recommended that the Board verify the predetermined status of those workers. After the audit, the Board's Predeterminations Unit for a second time issued predeterminations to the workers in question.

## II. PROCEDURAL BACKGROUND

[¶6] In September 2011, the AIU filed a complaint alleging that Holyoke had violated 39-A M.R.S. §§ 401 and 403 "by failing to obtain or maintain approved workers' compensation insurance coverage for its employees." At a

---

[3] Pursuant to the Workers' Compensation Rating Act (WCRA), 24-A M.R.S. §§ 2381 to 2387-B (2014), a workers' compensation insurer may adopt a rate, defined as "the cost of insurance per exposure base unit," 24-A M.R.S. § 2381-C(8), that provides for retrospective premium adjustments based on the insured's experience during the policy period, 24-A M.R.S. § 2382-D(5). Because workers' compensation benefits are payable only to an "employee," 39-A M.R.S. § 201(1) (2014), and "independent contractors" are excepted from the WCA's broad definition of "employee," 39-A M.R.S. §§ 102(11), (13-A) (2014), a policy's exposure base depends on the correct classification of the insured's workers. Holyoke's policies allowed its insurers to assess their risk exposure by reaching conclusions about the correct classification of Holyoke's workers within the meaning of the WCA. If, after an audit, an insurer concluded that Holyoke had misclassified an employee as an independent contractor, it could assess a retrospective premium adjustment based on the remuneration paid to the misclassified worker.

prehearing conference and throughout a series of evidentiary hearings, Holyoke argued that no violation of the WCA's insurance coverage requirements could occur as a matter of law when an employer maintained a workers' compensation insurance policy that would pay benefits to any worker determined to be an employee entitled to benefits, regardless of whether the worker was initially classified as an employee or an independent contractor for payroll and premium purposes. In an order dated November 14, 2011, the hearing officer rejected Holyoke's argument, concluding, "It is not sufficient to have a policy on some . . . workers and to assume that others would be covered should they later make a claim and prevail."

[¶7] The hearing officer issued a similar order in November 2012, reasoning that section 401(1)'s mandate that an employer "secure the payment of compensation . . . with respect to all employees" required that an employer "provide . . . coverage to [its] employees concurrent with their employment." He suggested that Holyoke's contention "would permit a large employer to insure only one worker and pay later if others were deemed employees," and hypothesized that such an interpretation of the WCA's coverage requirements would undermine the funding mechanism of the workers' compensation system.

[¶8] The hearing officer determined that Holyoke had misclassified nine workers and violated the WCA's coverage requirements by failing to secure

insurance coverage for those misclassified workers. As a sanction, he imposed a civil penalty of $30,000. *See* 39-A M.R.S. § 324(3)(B) (2014).

[¶9] Holyoke appealed to the Appellate Division. *See* 39-A M.R.S. § 321-B(1)(A) (2014). In a decision issued on April 24, 2014, the Appellate Division interpreted section 401 to require that an employer purchase workers' compensation coverage for all employees—including those erroneously predetermined to be independent contractors—concurrent with their employment, reasoning that any other interpretation would render the word "all" in section 401(1) meaningless and defeat the risk-spreading objective of the WCA's coverage requirements. Though the Appellate Division affirmed the determination that Holyoke had misclassified workers as independent contractors, it vacated the penalty, concluding that the Board's authority to impose sanctions for misclassification of construction subcontractors is specifically governed by 39-A M.R.S. § 105-A(3) rather than the general section 324(3) penalty provision, and that section 105-A(3) is ambiguous with respect to the extent of the Board's authority.

[¶10] Holyoke and the AIU both petitioned for our review of the Appellate Division's decision pursuant to 39-A M.R.S. § 322(1) (2014) and M.R. App. P. 23(a), (b)(1). We granted their petitions, and this appeal ensued. *See* 39-A M.R.S. § 322(3) (2014); M.R. App. P. 23(c).

## III. DISCUSSION

A.    Operative Decision

[¶11]  Before addressing the merits of this appeal, we take this opportunity to clarify which decision in the workers' compensation appeals process is "operative" for the purposes of our appellate review.  In light of the similarity of the current and former statutes authorizing review of Board decisions by the Appellate Division and by us, and the paucity of our workers' compensation precedents since the revival of the Appellate Division, we look to the relevant history of the WCA and to cases that were appealed to us from the former Workers' Compensation Commission Appellate Division.

[¶12]  The Workers' Compensation Board Appellate Division was created by an amendment to the WCA that became effective in 2012.  P.L. 2011, ch. 647, § 20 (codified at 39-A M.R.S. §§ 321-A, 321-B (2014)) (effective Aug. 30, 2012). Pursuant to that amendment, "appeals from decisions of individual hearing officers . . . proceed to the Appellate Division as a matter of right," *Estate of Sullwold v. Salvation Army*, 2013 ME 28, ¶ 5, 63 A.3d 1061, and appeals from decisions of the Appellate Division proceed to us on a discretionary basis, P.L. 2011, ch. 647, § 21 (codified at 39-A M.R.S. § 322(1)); M.R. App. P. 23(b)(2) & Advisory Note–August 2012.  These procedures for review of Board decisions mirror the procedures in effect from 1981 to 1993, which allowed an appeal from a

8

decision of the former Workers' Compensation Commission to proceed as of right to the former Appellate Division, and then to us on a discretionary basis. *See* P.L 1981, ch. 514, § 6 (codified at 39 M.R.S. §§ 103-A, 103-B, 103-C, 103-D, 103-E (Supp. 1982-1983)) (effective Sept. 18, 1981); *see also Hanover Ins. Co. v. Workers' Comp. Bd.*, 1997 ME 104, ¶ 10, 695 A.2d 556 (describing those procedures); *Mathieu v. Bath Iron Works*, 667 A.2d 862, 865 (Me. 1995) (same).

[¶13]  Based on this similarity in structure and process, we will utilize the procedures that we followed from 1981 to 1993 in reviewing appeals from decisions of the Appellate Division.  When we consider a decision of the Appellate Division reviewing a decision of a hearing officer pursuant to 39-A M.R.S. § 322(1), we will not review the Appellate Division's decision, but will instead review the record before the hearing officer and independently assess the hearing officer's decision.  *See Keene v. Fairchild Co.*, 593 A.2d 655, 658 (Me. 1991); *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1119 (Me. 1985)

B.    Standard of Review

[¶14]  The hearing officer's interpretation of the WCA is a matter of law, which we review de novo. *Estate of Sullwold v. Salvation Army*, 2015 ME 4, ¶ 7, 108 A.3d 1265.  When construing the WCA, our purpose is to give effect to the Legislature's intent.  *Estate of Joyce v. Commercial Welding Co.*, 2012 ME 62, ¶ 12, 55 A.3d 411.  "In so doing, we first look to the plain meaning of the statutory

language, and construe that language to avoid absurd, illogical or inconsistent results." *Id.* (quotation marks omitted). We look beyond a statute's plain meaning only if the statutory language is ambiguous. *Id.* "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.*

[¶15] With these principles in mind, we turn to the substantive issue presented by this appeal, namely, whether the hearing officer erred in determining that Holyoke violated the WCA's insurance coverage requirements.

C.    The Insurance Coverage Requirements of the WCA

[¶16] Because the statutes at issue in this case are unambiguous, we need go no further in our examination of them than their plain meaning.

[¶17] Title 39-A M.R.S. § 401 provides, in relevant part:

> **1. Private employers.** Every private employer . . . is subject to this Act and shall secure the payment of compensation in conformity with this section and sections 402 to 407 with respect to all employees, subject to the provisions of this section. . . .
>
> **3. Failure to conform.** The failure of any private employer . . . to procure insurance coverage for the payment of compensation pursuant to sections 402 to 407 constitutes failure to secure payment of compensation provided for by this Act within the meaning of section 324, subsection 3, and subjects the employer . . . to the penalties prescribed by that section. . . .

[¶18] Title 39-A M.R.S. § 403 similarly provides:

> An employer subject to this Act shall secure compensation and other benefits to the employer's employees in one or more of the ways described in this section. The failure of any employer subject to this

Act to procure insurance coverage for the payment of compensation and other benefits to the employer's employees in one of the ways described in this section constitutes failure to secure payment of compensation provided for by this Act within the meaning of section 324, subsection 3 and subjects the employer to the penalties prescribed by that section.

[¶19]  Title 39-A M.R.S. § 324, which is referenced in sections 401(3) and 403, provides in relevant part:

**3. Failure to secure payment.**  If any employer who is required to secure the payment to that employer's employees of the compensation provided for by this Act fails to do so, the employer is subject to . . . penalties . . . . The failure of any employer to procure insurance coverage for the payment of compensation and other benefits to the employer's employees in compliance with sections 401 and 403 constitutes a failure to secure payment of compensation within the meaning of this subsection.

[¶20]  Holyoke and the AIU each argue that the legislative intent animating the WCA's coverage requirements is apparent from the plain language of sections 401 and 403, but they disagree about what that language means.

[¶21]  Holyoke contends that an employer complies with the requirements of sections 401 and 403 by purchasing a workers' compensation policy that will pay benefits to any worker who is entitled to receive them.  It maintains that an employer's classification of workers for payroll purposes and the premium that the employer pays to its workers' compensation insurer are not relevant to the employer's compliance with the WCA's coverage requirements.

[¶22] The AIU argues that Holyoke's interpretation of sections 401 and 403 "would foster abuse of the workers' compensation system" by allowing employers to classify a single worker as an employee and pay workers' compensation premiums that do not reflect the number of workers who are in fact employees or the risks posed by those workers to the workers' compensation system.[4] It contends that an employer fulfills the obligation to "secure . . . compensation" for all employees only by correctly classifying its workers at the time that it purchases a workers' compensation policy and paying premiums during the policy period that reflect the remuneration paid to all employees.

[¶23] Contrary to the AIU's contention, the plain language of sections 401(1) and 403 does not require an employer to correctly classify workers for payroll purposes and to pay workers' compensation premiums based on those classifications. Those sections make no reference to the timing or manner of worker classification or the timing of premium payments, but simply require an employer to "secure the payment of compensation" for its employees pursuant to 39-A M.R.S. §§402 and 407 (2014). The text of sections 401(1) and 403 unambiguously obligates an employer to make arrangements for the payment of

---

[4] The potential for abuse of the workers' compensation system through worker misclassification is mitigated when, as in this case, an insurer requires predeterminations of independent contractor status as a prerequisite to insuring an employer who classifies some workers as independent contractors.

12

workers' compensation benefits to its employees. It does not require that the employer do so at any particular time.

[¶24] Section 403(1) provides that an employer complies with its obligation to "secure compensation" to its employees "by insuring and keeping insured the payment of such compensation . . . under a workers' compensation insurance policy . . . ." Title 39-A M.R.S. § 407 likewise provides that "[a]n employer with a currently approved workers' compensation policy . . . is deemed to be in compliance with this Act . . . ." Pursuant to these sections, an employer complies with the WCA's coverage requirements by purchasing workers' compensation insurance that will provide coverage for all workers. The Act does not require an employer to obtain a policy with premiums based on all workers, including those initially deemed to be independent contractors.[5]

## IV. CONCLUSION

[¶25] We conclude that Holyoke complied with the plain meaning of sections 401(1) and 403 by maintaining workers' compensation insurance policies that would pay benefits to any worker who was entitled to them. "Workers'

---

[5] Our opinion today concludes that sections 401(1) and 403 unambiguously require an employer to arrange for the payment of workers' compensation benefits to any worker who is entitled to them. In light of this conclusion, we need not consider the relationship between the WCA's coverage requirements and the predetermination and premium adjustment procedures discussed *supra* at nn.2-3. We note, however, that the Legislature addressed worker classification and timing-of-premium-payment issues through those procedures, and did not incorporate related conditions into the WCA's coverage requirements. Thus, contrary to the AIU's contentions, it is those procedures, rather than the WCA's coverage requirements, that remedy the misclassification of workers for underwriting and premium purposes, and thereby protect the funding mechanism that enables the payment of benefits to employees.

compensation insurance policy" is defined as a policy that guarantees the payment of workers' compensation benefits to those persons who are entitled to receive them pursuant to the WCA. *See* 39-A M.R.S. § 102(19) (2014). At all relevant times, Holyoke maintained workers' compensation insurance policies that guaranteed the payment of benefits required by the WCA.

[¶26] In light of our conclusion that Holyoke complied with the coverage requirements of the WCA, we do not address Holyoke's estoppel contention, its challenge to the Board's finding that it misclassified workers, or the AIU's contention regarding the Board's statutory authority to sanction construction contractors that misclassify independent contractors.

The entry is:

> The decision of the Workers' Compensation Board Appellate Division is (1) affirmed to the extent that it vacated the Board's imposition of penalties on Holyoke, and (2) vacated insofar as it determined that Holyoke violated the WCA's coverage requirements.

---

SAUFLEY, C.J., concurring.

[¶27] I concur in the Court's opinion but write separately to encourage legislative clarification of the appellate process in workers' compensation cases. *See Johnson v. Home Depot USA, Inc.*, 2014 ME 140, ¶ 9, 106 A.3d 401

(recognizing the legislative intent to delegate broad authority to the Workers' Compensation Board to interpret the Workers' Compensation Act).

[¶28]  The factual findings of a hearing officer are not ordinarily subject to appeal, either before the Appellate Division of the Workers' Compensation Board or before the Law Court.  *See* 39-A M.R.S. § 321-B(2) (2014).  Thus, in any appeal, the Appellate Division will focus on reviewing the hearing officer's legal interpretations.

[¶29]  In each individual appeal, the Appellate Division comprises three full-time hearing officers, none of whom were adjudicators in the case at issue, who apply their collective expertise in understanding and interpreting workers' compensation law to review a single hearing officer's decision.  *See* 39-A M.R.S. §§ 321-A(2), 321-B(3) (2014).  Given this design and composition, it seems logical that the legal interpretation of the three-person Appellate Division, not the individual hearing officer, would be reviewed on appeal to the Law Court, with appropriate deference given to the Appellate Division in the event that a statute—unlike those at issue here—is ambiguous.  *Cf. S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶¶ 3, 5-7, 868 A.2d 210 (deferring to statutory interpretation by the Board of Environmental Protection in an appeal to the Board from a Department of Environmental Protection ruling), *aff'd*, 547 U.S. 370 (2006).

[¶30] However, the workers' compensation statutes do not direct the Court to review the Appellate Division's legal interpretations. *See* 39-A M.R.S. §§ 321-A to 322 (2014). Thus, the Court has appropriately applied existing Maine law, which requires it to review, and potentially defer to, the legal analysis set forth in the "operative decision." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773. Here, the operative decision is that of the single hearing officer rather than the three hearing officers who used their collective wisdom to rule on the law as the Appellate Division. *See Estate of Sullwold v. Salvation Army*, 2015 ME 4, ¶ 7, 108 A.3d 1265.

[¶31] In the matter before us, the distinction does not affect the outcome in any way. Nonetheless, I encourage the Legislature to consider whether it is the original hearing officer's legal interpretation or the Appellate Division's interpretation that should be reviewed in an appeal to the Law Court, and to enact any statutory measures that it may deem necessary to clarify the Court's role in workers' compensation appeals.

**On the briefs:**

Paul H. Sighinolfi, Esq., John C. Rohde, Esq., and Seanna L. Crasnick, Esq., Workers Compensation Board, Augusta, for appellant Workers' Compensation Board Abuse Investigation Unit

James D. Poliquin, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellees Nate Holyoke Builders, Inc., et al.

**At oral argument:**

Paul H. Sighinolfi, Esq., for appellant Workers' Compensation Board Abuse Investigation Unit

James D. Poliquin, Esq., for appellee Nate Holyoke Builders, Inc., et al.

Workers Compensation Board Appellate Division case number 13-04
FOR CLERK REFERENCE ONLY